ECLIPSE LUMBER COMPANY, Appellant, v. THE MURPHY COMPANY, INCORPORATED, et al., Appellees.

NOVEMBER 20, 1928.

*Lyon & Willging*, for appellant.

*J. A. Dempsey* and *A. J. Eaton*, for appellee.

EVANS, J.—The plaintiff's account originated in April or May, 1920, and was completed in May, 1921. In August, 1921, a claim for mechanic's lien was filed with the clerk of the district court, pursuant to statute. On December 20, 1922, the plaintiff filed its petition herein. We have before us a very confusing record, and one which is quite incomplete. The plaintiff named as defendants, R. H. Murphy, D. J. Murphy, Agnes Murphy, The Murphy Company, Incorporated. The last named defendant answered. For some reason not appearing in the record, the case thereafter lay dormant in the district court until 1927. On the eve of trial, and in March, 1927, certain parties denominating themselves "substitute defendants" filed an answer, which was, in substance, a general denial. Their interest in the litigation was in no manner indicated in their pleading, nor in any other pleading. They introduced evidence, however, that they had become purchasers of the property sought to be charged with plaintiff's lien.

Pursuant to an oral contract entered into between plaintiff's agent, one Martin, and R. H. Murphy and D. J. Murphy, the plaintiff furnished certain building material, consisting mainly of lumber, for the purpose of constructing a powdered milk factory. The difficulties now confronting the plaintiff began early in the transaction. The plaintiff owned a lumberyard at

Waukon. Martin was its agent in charge thereof. It was essential for the plaintiff to show that it had contracted with The Murphy Company, Incorporated; that its delivery of material was to the same defendant; and that such defendant was the owner of the property upon which the lien is claimed. It appears that such defendant, The Murphy Company, Incorporated, was not in existence at the time the contract was entered into, nor does it appear by any direct evidence that it was in existence at the time of the delivery of any of the material. The theory of the plaintiff is that R. H. Murphy and D. J. Murphy were intending to organize such a corporation; that they were purporting to act in behalf of such corporation; that they did organize the same; and that such factory was built, either by such corporation or by R. H. and D. J. Murphy for such corporation. Martin, as a witness, testified to the origin of the transaction as follows:

"A. Mr. Murphy told me he had bought that land. Further than that, I had no evidence, only Mr. Murphy's word for it; and under the dealings I had had with him in the past, I hadn't any reason to doubt what he told me. Q. State whether or not it was on the strength of the representations that he had purchased this land and was going to erect a milk factory that you extended him credit. A. It was. After I had had this talk with R. H. and D. J. Murphy, I commenced to deliver material. I have a record with me of the materials that I delivered on the ground where this powdered milk factory was erected. It is shown in the sales slips. * * * Within a day or two, I went up to Mr. D. J. Murphy's office, and talked to him in regard to what he told me. He said they were going to go ahead and build this plant; that R. H. Murphy was to have charge of it. D. J. Murphy told me he would personally see that all the bills were paid; he wanted R. H. to have the business experience; R. H. was going to have personal charge of it. I was to go ahead and make any deal that the boy wanted to make, and that we could agree on, for material for this plant, and let him have anything he wanted for the plant."

He also testified as follows:

"It was charged to R. H. Murphy, or The R. H. Murphy Co. He told me it was he and the boy together that was organ-

izing and going to conduct the business, and he would see it was taken care of. I had never had any dealings with R. H. prior to that time, and when he was telling of what they expected to do down there, it sounded to me as though it was a little bit fishy, or visionary, and I was doubtful if D. J. was interested in it; and if it was R. H. Murphy, I didn't want to let him have the amount of material he indicated he was going to want; and I went to D. J. to find out if it was a fact that the two of them were going it together, or if it was R. H. going alone. If he was going alone, I didn't want to have anything to do with it. It was at that time he told me he would guarantee the payment. It was during the month of April, 1920, or about that time, that I saw D. J. Murphy and had this conversation.''

Martin entered the charges upon his books partly to R. H. Murphy, partly to D. J. Murphy, partly to R. H. Murphy & Company, and partly to all these parties. R. H. Murphy had informed Martin that a company was to be formed, and known as the R. H. Murphy Company. The plaintiff filed its lien against the R. H. Murphy Company. No such company appears to have been in existence, either as a corporation or a partnership, unless R. H. and D. J. Murphy should be deemed a partnership under such name, by reason of the conversations related. It does not appear from the record that any of these persons had any interest in the title to the real estate upon which the powdered milk factory was erected. In November, 1921, a warranty deed was placed of record from Earl, as grantor, to The Murphy Company, Incorporated, as grantee. In July, 1921, the same grantee had received a quitclaim deed to the same property from the Waukon Condensed Milk Company. It does not appear that either of these grantors had any interest in, or connection with, the grantee corporation, or with the powdered milk factory. Nor does it appear when or by whom The Murphy Company, Incorporated was organized. Nor does it appear that R. H. or D. J. Murphy had any official connection with it. We find no direct evidence in the record as to who built the powdered milk factory. An implication might be drawn from some circumstances appearing, that it was built by R. H. and D. J. Murphy. The district court incorporated in its judgment entry the following finding of facts;

1284

"That at no time did R. H. Murphy, D. J. Murphy, or The R. H. Murphy Co., being the parties with whom the plaintiff contracted and dealt, have any interest, right, or title in and to said real estate, or any part thereof, or the possession of the same, or right to enter upon or erect buildings, or make other improvements thereon, and had no right, permission, or license, directly or indirectly, or by implication, to represent, in any capacity, as contemplated by law, the defendants, The Murphy Co., Inc., A. J. Eaton, Farmers Savings Bank of New Albin, Iowa, or any person, corporation, association, or party, through whom their title was derived.

"That R. H. Murphy, D. J. Murphy, or the R. H. Murphy Co., had no right, permission, or authority, as contemplated by statute, from any owner of said real estate, or their grantors, to erect or construct any building or improvement upon said land. That such buildings or improvements, if any, were not made for the use and benefit of the owners of the real estate, and if made at all, were made without the knowledge and consent of the owners of the real estate. That said materials were not furnished for the use and benefit of The Murphy Co., Inc., or for substituted defendants, A. J. Eaton, Farmers Savings Bank of New Albin, Iowa, or for any person through whom they derived their title to the lands in question."

There is much in the plaintiff's position that appeals to the judicial sense of equity, but the rights which it seeks to enforce are purely statutory. It can enforce its lien only pursuant to a contract entered into with the then owner of the property sought to be charged. It obtained personal judgment against R. H. and D. J. Murphy. The petition was dismissed, as against The Murphy Company Incorporated, because of a failure of proof to connect that company with the transaction.

The plaintiff relies at this point upon certain admissions in Paragraph 3 of the answer of The Murphy Company, Incorporated, as follows:

"Par. 3. That as to whether or not plaintiff furnished for use in construction of powdered milk factory on said described real estate the merchandise and commodities set out and referred to in Exhibit A of plaintiff's petition, or delivered same at or upon said premises, defendants have not sufficient knowledge nor

information to form a belief, except that they admit that certain materials, the exact amount and description of which they do not know, were furnished and delivered by plaintiff; and that none of said materials were sold upon the terms and conditions set out in plaintiff's petition, or at the price specified in said Exhibit A.''

We do not think that the foregoing paragraph lifted from the plaintiff any substantial burden of proof. At the time of filing its answer, this defendant was not the owner of the property, and even its admissions would not be available to the plaintiff as against the present owners, the other defendants. The case presented upon this record has very perplexing features. Our reading of the record impresses us with the probability that the plaintiff had in fact a more meritorious case than it was able to prove. But this is a speculation in which we may not indulge. The record, as it is, fails to show that the plaintiff was entitled to a mechanic's lien upon the property in question.

The judgment of the district court is, accordingly,—*Affirmed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.