IOWA BUILDERS' SUPPLY COMPANY, Appellee, v. H. H. PETERSEN et al., Appellants.

No. 43468.

JUNE 19, 1936.

France & France and J. C. France, for appellants.

Donnelly, Lynch, Anderson & Lynch, for appellee.

PARSONS, J.—This is an action to foreclose a mechanic's lien for material furnished to repair buildings on a farm in Scott county, Iowa. H. H. Petersen owned the farm, and leased it to a tenant, Russell Porth, for a term from March 1, 1931, to March 1, 1932. Petersen then deeded the land to the H. H. Petersen Investment Company, August 11, 1931 (also a defendant herein), which deed was recorded in Scott county August 31, 1931. The deed to the investment company was delivered to H. H. Petersen as president of the company, and Petersen then assigned the lease to the corporation. In a letter dated March 5, 1931, Petersen wrote to Mr. Porth:

"It will be o. k. to purchase the boards he needs for gates and also for fencing and he can have this charged to me or pay for them and deduct from rents." In the same letter he wrote: "Now as to the little items, such as paint, paper for papering and etc. You buy this and I understand I am not to be charged for papering and painting. The way my tenants generally do, they pay for these items, take receipt and when they pay rent, send the receipts as payments and deduct from the rents."

This letter is affirmative of the fact there had been some arrangement or conversation between Petersen and the tenant in reference to the repairs, etc. There was also other correspondence. As early as January 21, 1931, Mr. Porth wrote to Petersen in regard to a machine shed, saying:

"I find it will not do to put west side of corn crib so am writing you this to see what you think of the west end of cattle barn. * * * I would like to know what I can do about the garage as it is about 4 ft. too short for my car."

The farm was also leased to Mr. Porth by the corporation for the farming year of 1932, from March 1, 1932, to March 1, 1933.

The defendants filed separate answers. The corporation, answering, denied that any contract was made with the defendant Petersen, or that Porth was the agent of H. H. Petersen. It admitted that Petersen was the owner up to August 11, 1931, of the farm, and avers that he then deeded the land to the corporation. H. H. Petersen, answering separately, denied the allegations of the petition; admitted the real estate was sold and conveyed to the H. H. Petersen Investment Company, subject to the lease from Porth; denied that he ever authorized Porth to purchase materials from the plaintiff, or any person; admits Porth was tenant on the farm, and that Petersen was the owner of the land to August 11, 1931.

On these issues the matter went to trial before the district court, and on that trial the court, on the 3d day of June, 1935, entered a judgment against H. H. Petersen personally, and for costs, and a decree against both defendants, establishing and foreclosing a mechanic's lien as prior, and superior, to the interests of either of the defendants to the premises. From this an appeal was taken.

The defendants in argument set forth the ownership of the land, and that Petersen gave deed to the corporation, and in their brief submitted, made the point that the holder of the lien must have a contract with the owner, his agent, trustee, contractor, or subcontractor; that there was no contract with H. H. Petersen during the time he was owner of the land, and that there was no contract with H. H. Petersen Investment Company thereafter, and that hence the mechanic's lien could not be sustained, and that neither of the defendants could be held on it, citing section 10271 of the Code of 1931. It is the contention of the plaintiffs that Porth was such an agent, such as to bind Petersen; that is, had the authority to order the material, to repair buildings, fences, etc., on the farm, and that the dealings between him and H. H. Petersen authorized him so to do. In support of their proposition the defendants cite: Queal Lumber Co. v. Lipman, 200 Iowa 1376-1379, 206 N. W. 627; Eclipse Lumber Co. v. Murphy Co., 206 Iowa 1280, 221 N. W. 930; Southern Surety Co. v. York Tire Service, 209 Iowa 104, 227 N. W. 606;

Cedar Rapids Sash & Door Co. v. Dubuque Realty Co., 195 Iowa 679, 192 N. W. 801.

Queal Lumber Co. v. Lipman, supra, merely decides that a mechanic's lien may not be enforced against a tenant's leasehold interest and against the improvement erected by him, other than by a sale of the leasehold interest and the improvement as a whole, when the improvement was erected by the tenant under a specific agreement that the improvement should, upon the termination of the lease, become the property of the lessor. In other words, the improvement may not be separately sold and removed. There is in this case a discussion of several cases supporting the proposition laid down in the cited cases. In the case one Graeser is the owner of a quarter section of land situated west of the city of Des Moines; that he entered into a lease with one Lipman for about one acre in the southwest corner of the land, the lease to run for twenty-five years, lessee to pay all taxes levied against the premises, provided that said premises should be used for a restaurant and eating house. The construction was to be completed prior to August 1, 1923, improvements costing not less than $6,000; and providing further that neither the lessee nor any one claiming by, through, or under lessee shall have any right to file or place any mechanic's lien of any kind or character upon said premises, buildings, or improvements thereon; and for further security of the lessor, said lessee agreed to give actual notice thereof in advance to any and all contractors, subcontractors, or other persons or corporations that may furnish any such material, service, or labor. The lease was filed for record. Lessee completed the building, and in a short time abandoned it. The court says that in making this lease between lessor and lessee, they had the right to provide any terms and conditions they might determine upon, and to place the same in the lease as long as such terms and conditions were not unlawful. The buildings erected were to remain on the land for the security of the lessor, so it was held that neither could the buildings be taken off nor could defendant be held liable.

Eclipse Lumber Co. v. Murphy Co., 206 Iowa 1280, 221 N. W. 930, simply decided that failure of a mechanic's lien claimant to prove that he furnished the materials in question under and by virtue of a contract with the owner of the premises, or with some one legally representing the said owner, is fatal to his claim to a lien, and held that at no time did the persons

who made the contract with the claimed lien-holder have any interest, right, or title in and to the said real estate or any part of it, and further it did not appear they had any authority to bind the owners of the real estate.

Southern Surety Co. v. York Tire Service, 209 Iowa 104, 227 N. W. 606, merely holds that a mechanic's lien may not be established for a building erected on land by a *tenant* under an agreement with the landlord-owner that the tenant may, and if required by the landlord will, remove it when the lease terminates.

Cedar Rapids S. & D. Co. v. Dubuque Realty Co., 195 Iowa 679, 192 N. W. 801, holds that a materialman who has furnished materials for the repair of a building under a contract with the lessee may not establish his lien against the *owner* on a showing (1) that the owner had, in good faith, imposed upon the lessee, when the lease was made, the burden of making all repairs; and (2) that later the owner had agreed to give, and had given, the lessee a named credit on the rent, by reason of said repairs. The rent upon which the credit was given was rent reserved for the premises.

These cases in no way assist the defendants, unless it appears that Porth, who ordered the material from the plaintiff, had no authority to bind his landlord H. H. Petersen.

It is the contention of the plaintiffs in the case that the material was furnished upon the request of Porth, the tenant, and that Porth had authority, and that the dealings between him and Petersen gave him the authority to act as he did; and, further, that Petersen was the acting officer of the corporation, that he looked after the farm the same as he did prior to deeding it to the corporation, and that he acquiesced in giving authority by his conduct, and in doing so gave Porth authority to bind the corporation.

In addition, the testimony shows that in July, 1930, Petersen, who then owned the farm, discussed with Porth the terms of the rental for the next year; talked about the buildings on the farm, and the necessity of repairs to the hog house, about the machinery shed, the need of it, and as to $25 being allowed for the machine shed; Porth told him it wouldn't go very far, and Petersen told him, "Well, if it runs over it won't hurt much." That Porth was to look after these repairs in that way. That when Petersen was on the farm he and Porth discussed the

repairs that had been made, and Porth told Petersen about the bill with the plaintiff company. Petersen told Porth he was going down to see that it was paid before he went to Sioux City, and told Porth it was all right what he was doing there. Petersen told Porth to get it fixed up the way it needed to be fixed, to get the lumber, and give him the bill; and the lumber was used in making these repairs. That in April, 1933, at the office of attorney Horsch in Davenport, Porth told Petersen he was not going to be tied down to the lumber bill, and Petersen said he would see to it, that it was paid. That Petersen never came down to look at any of the improvements, even after he knew there was a lawsuit about it. These improvements have all remained on the farm, and they went over to the corporation, and Petersen and the corporation are bound equally. Love Bros. v. Mardis, 189 Iowa 350, 176 N. W. 616; Burdick v. Moulton, 53 Iowa 761, 6 N. W. 48.

The testimony also shows that after the farm was deeded to the corporation Petersen continued to manage it, just as he did before, and his actions would be the acts of the corporation.

Plaintiff herein was not a party to the contract made by the corporation with Porth. It can show the real facts, notwithstanding they are not covered by the lease made between the corporation and Porth.

The whole testimony we think supports the conclusion of the lower court. The defendants seem to show a disposition to want to get something and keep something for nothing, and have gone into this lawsuit with all these improvements concededly made on the farm in good faith, materials furnished by the plaintiff, tenant acting in pursuance to the conversation and authority of Petersen as to ordering material.

We think the lower court was right in its holding that defendants were liable, and for these reasons the case is affirmed.

DONEGAN, C. J., and RICHARDS, STIGER, MITCHELL, HAMILTON, ANDERSON, KINTZINGER, and ALBERT, JJ., concur.