AMERICAN TRUST & SAVINGS BANK OF CEDAR RAPIDS, Appellee, v. BRUCE A. WEST et al., Appellees; H. MEDD, Appellant.

H. MEDD, Appellant, v. BRUCE A. WEST et al., Appellees.

No. 41366.

June 24, 1932.

Floyd Philbrick and Raymond Klass, for appellant.

J. U. Yessler, for American Trust & Savings Bank, appellee.

M. O. Hanzlik, for Bruce A. West and Edna May West, appellees.

C. W. Bingham, for Cedar Rapids Sash & Door Co., appellee.

ALBERT, J.—We find that in January or February, 1929, the defendant Bruce A. West was the owner of a certain unimproved lot in the city of Cedar Rapids. Wilbur A. Williams was a lather by occupation. Discussion was had between West and Williams about building a house on said lot above referred to, which resulted in an oral agreement that a house should be built upon the lot, West to furnish the material and put in the plumbing, and Williams to furnish the labor, painting, wiring, etc. The property was being built for Williams, who agreed to pay for the same at the cost thereof, plus $500, and the parties proceeded to carry out this oral agreement. In carrying out his

part of the contract, Williams employed his stepfather, H. Medd, to do the carpenter work, and work was started about March 25, 1929. When Medd came to Cedar Rapids he and Williams had an interview with West and the plans for the house were discussed, and from time to time during its construction West made suggestions as to the manner of such construction. Construction was carried on to its final completion on July 6, 1929. On May 28, 1929, West gave a mortgage to the American Trust & Savings Bank, in the amount of $2,800, which was filed of record a few days later. This is the mortgage which is the basis of plaintiff's action.

At this time, an undivided one-half interest of the legal title to the lot stood in one Stookie, and there was then an existing agreement, made at a prior date, whereby Stookie was to convey his interest in said lot to West in return for West's interest in some other property. This latter agreement was carried out and West became the fee-title holder of the lot.

No question, however, is raised in this case with reference to Stookie's interest in the property.

It will be noted that this mortgage was executed while the building was in the process of construction. On June 24, 1929, a written contract was made between West and Williams by the terms of which West sold the property to Williams for $5,300, on which Williams was given credit for $1,450, representing time, labor and outlay in the performance of his part of the contract. The balance of the contract was to be paid out on monthly installments. Williams paid his contract down to $2,177.72, when he defaulted, and in August, 1930, West forfeited the contract. The total amount of work done by Medd was $598.49, on which he was credited $99.50, and on the 12th day of August, 1930, a mechanic's lien was filed for $498.99. No question is raised as to the correctness of this lien or the amount therein specified, or as to the time and manner of filing the same. The only question at this point is whether or not, under the circumstances, Medd was entitled to file such lien.

The appellee bank insists:

1st. That before Medd was entitled to file a mechanic's lien he must establish a contract between himself and West either express or implied.

2d. That the burden of proof is on such cross-petitioner to

allege and prove that there was a contract with the owner, agent, trustee, contractor or subcontractor.

3d. That the law is well settled that knowledge, acquiescence, permission and failure to object on the part of the party owning the title is insufficient to render the property liable to a mechanic's lien, or to create an implied promise on the part of the owner to pay for such improvements.

4th. That Medd must allege and prove that Williams was the agent of Bruce West with authority to act for him.

Section 10270, Code, 1931, reads as follows:

"1. 'Owner' shall include every person for whose use or benefit any building, erection, or other improvement is made, having the capacity to contract, including guardians.

"2. 'Subcontractor' shall include every person furnishing material or performing labor upon any building, erection, or other improvement, except those having contracts therefor directly with the owner, his agent, or trustee."

Section 10271. "Every person who shall furnish any material for or perform any labor upon any building, including those engaged in the construction or repair of any work of internal improvement and those engaged in grading any land or lot, by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor shall have a lien upon such building and upon the land belonging to such owner on which the same is situated, or upon the land or lot so graded, to secure payment for material furnished or the labor performed."

It will be noted that three of the contentions of the plaintiff involve the question of a contract between the owner and the carpenter. In the case of Veale Lbr. Co. v. Brown, 197 Iowa 240, we had the identical situation we have in the instant case, under the same set of facts. With relation to this matter we said:

"For the purposes of this case, it is immaterial whether the oral agreement between appellant and Brown be held to be in the nature of a contract of agency, as we have suggested, or as a tentative or enforcible contract for sale of the lots; for in either case, under the terms of the statute and its settled construction by the courts, both parties to such an agreement as the record

discloses may be treated as 'owners,' within the meaning of the lien law. * * * Indeed, to hold otherwise would be to open an easy door to collusion and fraud, at the expense of dealers in building materials. The admitted or undisputed facts in this case do not permit an application of the rule invoked by appellant, that a person who loans or advances money to another for the erection of buildings or other improvements on land acquires a lien superior to subsequently accruing liens of materialmen and laborers. As we have already noted, appellant is himself an 'owner' of the property; the improvement has been made, not only with his knowledge and consent, but in pursuance of his express contract; and it would be but little less than absurdity to hold that he is entitled to precedence for his contribution to the improvement of his own property, over creditors who furnished the materials used in making such improvement.''

The Veale case, together with the cases therein cited, is decisive and controlling on this question. It follows that in the instant case Medd had a right to file the mechanic's lien and to have the same foreclosed.

As to the other question raised in the case, it will be noted that the mortgage sued on, which was the basis of the foreclosure in the plaintiff's action, was taken after the construction of the building was commenced, but before its completion. The mechanic's lien was not filed within the statutory limit, and the plaintiff insists, therefore, that such lien cannot take precedence over the lien of its mortgage. We had this identical question in the case of Wood v. Ball, 194 Iowa 50, where we reviewed the statute with reference to these matters and said:

''It would be difficult to guard the rights of a mechanic's lien holder more zealously than the statute in its present form does. Manifestly, the failure to file the lien within the statutory time did not operate in favor of the priority of the bank mortgage.''

The above case is decisive on this proposition, and the conclusion therefore reached is that Medd was entitled to the foreclosure of this mechanic's lien, and the decree should have pro-

vided that the lien acquired under the same was superior to the rights of the plaintiff bank under its mortgage.

This view is contrary to that reached by the district court.— Reversed.

WAGNER, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.