DENNISTON & PARTRIDGE COMPANY, appellant, v. R. G. ROMP and VICTOR NIGRO dba MAR-CREST MUSHROOM COMPANY et al., appellees.

No. 48221.

(Reported in 56 N.W.2d 601)

JANUARY 13, 1953.

Fey H. Moody, of Des Moines, and Campbell & Campbell, of Newton, for appellant.

Miller, Huebner & Miller, of Des Moines, for appellees.

THOMPSON, J.—This litigation results from an unsuccessful venture in private enterprise by the defendants R. G. Romp and Victor Nigro. Romp was a resident of Des Moines and Nigro of the state of Pennsylvania. Nigro was a reputed expert in the cultivation and sale of mushrooms. He became acquainted with Romp and they conceived the idea of entering the business of growing these edible fungi in the vicinity of Des Moines.

Romp had known the defendant Marquis for some years. He was purchasing his home from her under a contract. She was the owner of land on East Fourteenth Street, apparently outside but not far removed from the city limits of Des Moines. The mushroom entrepreneurs approached her for the joint purposes of leasing a portion of her unimproved land and of procuring funds with which they might launch their business. This was in the summer of 1949, and some arrangement was made, the exact terms of which are determinative of this lawsuit. Without doubt the first agreement was oral. It was made, apparently, in August. Mrs. Marquis on August 29 advanced to Romp and Nigro, who had formed a partnership under the name of Mar-Crest Mushroom Company, the sum of $10,000, and took their unsecured promissory note for that amount, payable on August 29, 1952, with seven per cent interest. On November 25 following she advanced another $2500, taking again their unsecured note, payable on November 24, 1954, with the same rate of interest.

The Mar-Crest Company took possession of the real estate in question here about the end of August 1949. As described it consists of about ten acres and was then unimproved farm land. An arrangement was made by Romp and Nigro with the plaintiff herein, through the manager of its Ankeny yards, to furnish material for the buildings which were considered necessary for the proper raising of mushrooms. Such material was furnished from time to time as required, until December 1, 1949. On that date, or very shortly thereafter, the Mar-Crest Company being considerably indebted to plaintiff, it refused to deliver further material. At least one large building was substantially completed at the time.

On December 13, 1949, the defendant Marquis, as first party, and the defendants Romp and Nigro, as second parties, executed a written contract by the terms of which Mrs. Marquis, as lessor, leased the ten-acre tract to Romp and Nigro for a period of five years from and after September 1, 1949, with an option to renew for another five years. Donna Romp, wife of R. G. Romp, was a party to the lease, but apparently she appeared both in this instrument and in the mortgage to which reference will be later made only because of her marital status. She was not a member

of the partnership and her rights and liabilities, if any, are not material to the issues herein.

On the same date, December 13, 1949, Romp and Nigro executed a mortgage on the buildings on the described real estate to the defendants Marquis, Green and Christensen-Wilpitz. The latter two are daughters of Mrs. Marquis, and she testifies that she had some money belonging to them which, together with her own, made up the sum of $12,500 which the mortgage recites as consideration. It should be noted that the promissory notes above referred to also ran to Marquis, Green and Christensen-Wilpitz. There is no doubt that the $12,500 referred to in the mortgage and which it purports to secure is the same sum which makes up the total of the two promissory notes of August 29 and November 25 to which reference is made above. We are not told how much of the money was Mrs. Marquis' individually and how much she held and loaned as agent for her daughters.

The maturity dates set out in the mortgage are, however, materially different from those in the two notes. The mortgage specifies maturities in ten equal payments of $1250 each on May 1 and December 1 of the years 1950 to 1954, inclusive. It is of interest to note the lease and mortgage were each made on the same date, and that this date was about two weeks after the plaintiff had refused to furnish further material and the short-lived business was apparently in financial difficulties. Further evidence which is in dispute or the significance of which is contradicted will be referred to in the divisions of this opinion which follow.

I.    The trial court's decree denied plaintiff a lien upon the real estate occupied by Romp and Nigro, title to which is in Golden S. Marquis, and likewise denied them a lien upon the building erected thereon with material furnished by them. It also found that the mortgage of December 13, 1949, is superior to any claim of the plaintiff. That plaintiff filed its claim for a lien against the leased realty on February 8, 1950, within ninety days of the time of furnishing the last items of material, is not disputed; nor is the form of the lien questioned. The trial court found that under the agreement between Mrs. Marquis and Romp and Nigro the latter were not obligated to erect any buildings on the leased real estate. This, we think, is the im-

portant point in the case. A personal judgment was entered against Romp, who made default. It is not shown, and it is in any event immaterial to the issues herein, why no judgment was rendered against Nigro.

The mechanic's lien statutes, so far as material, are herewith set out. Section 572.1(1), Code of 1950, says: " 'Owner' shall include every person for whose use or benefit any building, erection, or other improvement is made, having the capacity to contract * * *."

Section 572.2: "Every person who shall furnish any material * * * for * * * any building or land for improvement, alteration, or repair thereof * * * by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor shall have a lien upon such building or improvement, and land belonging to the owner on which the same is situated * * * to secure payment for material * * * furnished * * *."

It must be confessed that our cases dealing with mechanic's lien claimants' rights are not always as clearly expressed as might be desired. Yet we think the major interpretations governing the case at bar are simple, and that the decided cases point the way to the proper decision, when the facts are once determined. It is settled that mere knowledge of or consent to the making of improvements by a lessee or vendee does not ordinarily subject the interest of the lessor or vendor to a mechanic's lien. Nolan v. Wick, 218 Iowa 660, 254 N.W. 80; Hunt Hardware Co. v. Herzoff, 196 Iowa 715, 195 N.W. 264; Cedar Rapids Sash & Door Co. v. Dubuque Realty Co., 195 Iowa 679, 192 N.W. 801; Rees, Gabriel & Co. v. Shepherdson, 95 Iowa 431, 64 N.W. 286, and many other cases lay down this rule.

On the other hand, if the lessor or vendor has, by agreement express or implied with his lessee or vendee, contracted for the improvement of his real estate by the latter, he should, in justice and under the rule of established authorities, be held to have subjected his interest in the realty to the claim of a mechanic's lien for the reasonable value of material or labor furnished. This is particularly true when the lease is so drawn that buildings erected become the property of the lessor after a comparatively short term, or where the improvement is such as to materially increase the amount of the stipulated rent. Ameri-

can Trust & Savings Bank v. West, 214 Iowa 568, 571, 572, 243 N.W. 297; Veale Lumber Co. v. Brown, 197 Iowa 240, 242, 243, 244, 195 N.W. 248; Denniston & Partridge Co. v. Brown, 183 Iowa 398, 402, 167 N.W. 190. The only problem confronting us here is to determine in which category the facts presented in the record fall.

The plaintiff urges that it is entitled to have its lien enforced against the real estate and building, including the interest of Golden S. Marquis; that if Mrs. Marquis' interest cannot be so subjected it should have a foreclosure against the building, and that its lien is superior to the mortgage of Mrs. Marquis and the other defendants. Since we have concluded that its position upon its first contention is sound it is not necessary to consider the second.

▇ II. We are of the opinion that the record definitely shows Mrs. Marquis made an agreement with Romp and Nigro which required them to erect buildings upon the leased real estate. Romp, called as a witness for plaintiff, says:

"The stipulation on which the money was loaned was that she was to furnish the ground. I was to erect a building and grow mushrooms with the money loaned me. That was the building or buildings described in my ultimate written lease."

It is true that the written lease executed after the building was substantially constructed, with material furnished by the plaintiff, and the mortgage made on the same day do not recite this agreement. It should be noted that these instruments were executed after the Mar-Crest Mushroom Company was in evident financial distress. The plaintiff had refused to furnish any more material. It is also true Mrs. Marquis testified, in answer to leading questions, which were not objected to upon that ground, that the lease and mortgage were each made in pursuance of previous oral agreements. She also said, again in answer to a leading question, which we quote: "When you made these oral agreements with Mr. Romp and Mr. Nigro I will ask you to state whether it was not—it was in their discretion as to whether or not they would build the buildings?" Answer, "Yes."

▇ It will be observed the question left nothing for the witness to do but to agree with counsel's statement, and the same

is true of the other two queries above referred to. While the absence of proper objection left the answers in the record for what they were worth, we think the weight of such testimony is very slight. The court should scrutinize it most carefully. It is the witness who should give the testimony, and this is ordinarily not accomplished when he is, in effect, told what answer his attorney wishes and is asked to do nothing more than to assent thereto. 32 C. J. S., Evidence, sections 1034, 1036, pages 1077–1079; Sinift v. Sinift, 229 Iowa 56, 71, 293 N.W. 841, 850. However, this testimony, such as it is, contains an admission against interest, coming from the defendant Marquis herself, which helps to make the real agreement evident. As indicated above, she agreed to her counsel's statement that the mortgage was made in pursuance of a previous oral agreement. The mortgage, when executed, covered the building which was not in existence when the oral agreement, whatever it was, must have been made. If there was an oral agreement the money would be loaned with an understanding that when buildings should be constructed upon the leased ground a mortgage would be executed upon such structures, how can it be contended that there was no agreement they would be built? Mrs. Marquis loaned the money, she says, in the expectation of getting security, by mortgage, upon the improvements to be made. Of course she expected them to be erected, and Romp and Nigro would have breached their agreement if they had not proceeded to build. We do not believe she advanced the sum of $12,500 and left it to the option of Romp and Nigro as to whether they would furnish security.

There are other items of interest at this point. The rental value per year of the leased land, without the buildings, appears in the record as $20 per acre. This is the testimony of Donald Hick, plaintiff's manager at Ankeny. It is not contradicted in any way by Mrs. Marquis. The land, while lying close to Des Moines, was unimproved and so had value for rental purposes only as farm land; perhaps for the raising of vegetables as well as of ordinary farm crops. But the lease entered into called for cash rental of $1000 per year—$100 per acre—for the first two years, and of $1500 per year—$150 per acre—for the next three. That Mrs. Marquis expected the mushroom raisers to

improve the land, and knew they must do so in order to justify the rent required, is too clear for argument. She is an active and capable businesswoman who manages her properties and loans money. She made up the plat showing the location of the leased premises, and stipulated that the buildings be placed on a certain part of the tract, "marked B", as she testifies.

Likewise there is the fact the lease was for five years only, with an option of renewal for five more. At the end of that time the lease ended with no provision for removal of the improvements. There was a clause requiring the lessees to quit and surrender, and another clause gave lessor the right to forfeit the lease and all rights of lessees upon their default, which it appears she has done. See Lane-Moore Lumber Co. v. Kloppenburg, 204 Iowa 613, 617, 215 N.W. 637. Mrs. Marquis further testified she loaned the money with the expectation that Romp and Nigro would "use some of the funds to pay for the building and the operation of the business." There is no doubt there was a definite understanding that at least a substantial part of the money advanced would be used for a building or buildings. Otherwise the agreement to give a mortgage could not have been carried out.

The situation here is very much the same as that in Veale Lumber Co. v. Brown, supra. There the owner of unimproved city lots entered into a contract with one Brown by the terms of which the vendor agreed to sell the lots to Brown, conveyance to be made in the future. Brown agreed to improve the lots with one or more houses at a cost not exceeding $4000, the vendor agreeing to advance funds to that extent, and when such improvement had been made the vendor, one Flaugher, was to enter into a contract of sale with Brown at a price of $5000. Brown proceeded to erect two houses and the vendor advanced a considerable sum to pay for the cost. But the cost was more than the owner's advancement, Brown was unable to pay, and lien claims were filed. The claimants were held to be entitled to liens against the real estate. Justice Weaver, for the court, said (pages 242, 243 of 197 Iowa, page 249 of 195 N.W.) :

"Flaugher's oral agreement with Brown not only contem-

plated the possibility of Brown's improving the property by constructing the proposed buildings, *but bound him so to do,* and provided that appellant should retain title and ownership in himself, to secure repayment of advances made for that purpose. *This scheme was, in effect, to make Flaugher a principal, and Brown his agent, with an interest in the subject-matter of the agency.*" (Italics ours.)

Again, the opinion quotes with approval from Guiou v. Ryckman, 77 Neb. 833, 110 N.W. 759, 124 Am. St. Rep. 877:

" 'Where the vendor and vendee co-operate together in plans for erection of improvements upon real estate covered by their agreement, the interest of the vendor * * * is bound for the payment of liens for labor and material which have been furnished for such improvements.' "

█ Defendant Marquis urges there is no showing she made any contract with plaintiff, or indeed had any knowledge that it was furnishing material for the buildings in question. Under the showing made no express contract between her and plaintiff was necessary. She was an "owner", within the terms of the statutory definition set out above; the improvements, in view of her contract with Romp and Nigro and her ownership of the realty upon which they were located, were for her benefit. Nor was it essential that she know with whom her lessees dealt in procuring the material for the improvements which her agreement with them required. The terms of Code section 572.2, supra, are sufficiently met if the contract is made with an agent of the owner, and one who by contract express or implied, oral or written, requires his lessee to improve the realty during the term of the lease will generally constitute such lessee his agent for the purpose of procuring material and labor, within the meaning of the statute.

It is our conclusion that the original oral agreement between Mrs. Marquis on one hand and Romp and Nigro on the other definitely required the erection of improvements on the leased real estate, and that Mrs. Marquis thereby made her lessees agents for the construction of the buildings to the extent that her interest in the realty became subject to the plaintiff's claim for mechanic's lien herein asserted.

■ III. It follows, of course, that the mortgage must likewise be inferior to plaintiff's claim. To hold that Mrs. Marquis might contract with Romp and Nigro for the erection of improvements on her land, which would make the realty subject to claims for mechanic's liens, but that she might then avoid the effect of her action by taking a mortgage for the sums advanced, would be, as said in Veale Lumber Co. v. Brown, supra, "but little less than an absurdity." It would permit something very like a fraud upon the suppliers of materials or labor. The realty owner, finding his escape from the just consequences of his attempt to enhance the value of his real estate blocked in one direction, cannot be permitted to escape in another in this way. Mrs. Marquis' rights under her mortgage cannot rise higher than her rights as owner of the real estate. The rule that one who advances money to another for the erection of improvements on land acquires a lien superior to those of materialmen or laborers has no application here. We have pointed out that Mrs. Marquis is herself an "owner" under section 572.1(1), and that the improvements, in view of her contract, were made for her "benefit." She cannot evade her responsibility by taking a mortgage, whether contracted for before or after the erection of the building.

. It appears that part of the money advanced belonged to Mrs. Marquis' daughters. How much was theirs, how much hers, we are not told. She was without question their agent, and since we think it was incumbent upon them to show what part of the mortgage belonged to them we must determine that plaintiff's rights are superior.

The cause is reversed, and remanded for decree in harmony with this opinion.—Reversed.

All JUSTICES concur.