H. V. Cassaday, d/b/a H. V. Cassaday Refrigeration and
Electric Company, plaintiff-appellee, v. Henry B.
DeJarnette et al., defendant-appellant
and defendants-appellees.

No. 49856.

(Reported in 101 N.W.2d 21)

FEBRUARY 9, 1960.

Evans, Duncan, Jones, Hughes & Riley, of Des Moines, for Marian Brown, administratrix of the estate of Louis P. Brown, deceased, defendant-appellant.

John B. Dyer, of Des Moines, for plaintiff-appellee; Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for Henry B. DeJarnette and La Von I. DeJarnette, defendants-appellees; Brunk, Janss & Dreher, of Des Moines, for J. C. White Excavating Company, defendant-appellee; Neiman, Neiman & Stone,

of Des Moines, for Merle Hay Block Company, defendant-appellee; Steward, Crouch & Kelly, of Des Moines, for George DeMoss, defendant-appellee; Clarence I. Spencer, of Des Moines, for A. & R. Concrete & Construction Company, defendant-appellee; and Louis A. Anania, of Des Moines, for Doyle R. Streit, defendant-appellee.

LARSON, C. J.—This is a suit in equity brought against defendants Henry B. DeJarnette and La Von I. DeJarnette, lessees, and Marian Brown, administratrix of the estate of Louis P. Brown, deceased, lessor, as well as certain other named claimants who also furnished labor and materials to lessee in the construction of a golf range on lessor's land. The five other claimants filed cross-petitions praying similar relief and, after a hearing on a motion to determine law points under rule 105, R. C. P., the trial court entered a judgment in favor of the various claimants, established mechanics' liens against lessor's real estate, and ordered their foreclosure. Defendant-lessor appeals.

The sole question involved in this appeal is whether, under the terms of the written lease and the related circumstances surrounding its execution, the trial court was justified in finding an express or implied contract or agreement between lessor and lessee whereby lessee was to place upon lessor's land improvements of some permanence, beneficial to lessor, which were to become lessor's property upon the termination of the lease, and which improvements created an additional value included in computing the sums to be paid as rental. Here as in many such cases, we find statements of the law quite clear, but their application has left much to be desired. This suit being in equity, we strive to reach a fair and equitable conclusion under the circumstances disclosed. In so doing, we give weight to the findings of the trial court, especially where credibility of the witnesses is a factor. Nevertheless, where the facts are not in dispute, we reserve the final determination for ourselves. After a careful examination of the record, documents and exhibits, we draw our own inferences when necessary. We do so here.

I. It is well settled in this jurisdiction that mere knowledge of or consent to the making of improvements by a lessee does not usually subject the interest of the lessor to a mechanic's

lien. Denniston & Partridge Co. v. Romp, 244 Iowa 204, 208, 56 N.W.2d 601, and cases cited; Thompson Yards, Inc., v. Haakinson & Beaty Co., 209 Iowa 985, 229 N.W. 266; Perkins Supply & Fuel Service v. Rosenberg, 226 Iowa 27, 282 N.W. 371; Queal Lbr. Co. v. Lipman, 200 Iowa 1376, 206 N.W. 627; and many other cases so state the rule; 36 Am. Jur., Mechanics' Liens, sections 93–95, pages 73–75.

II. It is also well established where a lessor has, by agreement express or implied with his lessee, contracted for an improvement of his real estate by the lessee, and it further appears that such improvement itself is a part of the value for which compensation is paid, and that the improvement is to become the sole property of lessor within a relatively short period of time, that the interest of the lessor in the realty is subject to the claim of a mechanic's lien for the reasonable value of the material or labor furnished in making that improvement. Denniston & Partridge Co. v. Romp, supra; American Trust & Savings Bank v. West, 214 Iowa 568, 243 N.W. 297; Veale Lumber Co. v. Brown, 197 Iowa 240, 195 N.W. 248; Denniston & Partridge Co. v. Brown, 183 Iowa 398, 167 N.W. 190.

A rather extended statement of the facts revealed by the record seems necessary. Louis P. Brown, age 73, the lessor, owned and rented considerable unimproved land in and about Des Moines, Iowa. Being confined to his home due to a heart attack, which took his life a week later, the lessee Henry B. DeJarnette came to his house on the evening of June 6, 1958, to discuss renting a piece of ground 1000 feet in length by 200 feet in the front and 400 feet in the rear, located on East Fourteenth Street in Des Moines. Mr. Brown himself was a lawyer and had in the past made rental arrangements and drawn leases in longhand. He had rented the piece north of this one for a trailer sales yard. On this occasion he called on his friend Mr. Eaton to aid him in settling the terms of a proposed written lease and do the leg work necessary to its preparation and execution. At this time Mr. Brown, his grandson Anthony Louis Brown, Mr. Eaton, and Mr. DeJarnette were present. The lessor's grandson testified: "* * * there wasn't too much discussion about it. * * * He [lessor] asked him, 'Are you sure you know how to run your business and that?' And he said he was. * * *

All he [Brown] was concerned with was that he got rent and there was a lease drawn up." Mr. Eaton was to have some lawyer draw up the lease.

On the next day Mr. Eaton and DeJarnette called on Attorney Colavecchio, who took notes (defendant's Exhibit 4 herein), and from them prepared the lease (Exhibit 3). That evening the lawyer and Mr. Eaton went over the lease with Brown before it was signed. According to the testimony offered, there was no discussion as to the fill-in later made near Fourteenth Street, no conversation as to concrete pads, nor as to the poles and lights later installed by lessee, and nothing was said as to a transformer box or concrete block building. There was some conversation as to a building to be used for an office. Brown's grandson said: "* * * he [lessee] said it was an office. * * * all I can remember is he said it was just a small building. I mean, it was just going to be something to operate out of. He didn't say what it was to be constructed of."

From these discussions of lessee's proposals, plus the stated rental of some $500 per acre per year during the five-year period, plus the fact that lessee might not be able under the lease to remove the so-called improvements if he defaulted, plus the words used in the written agreement, the trial court inferred an agreement between lessee and lessor which compelled lessee to make valuable improvements on the land that were to remain and become lessor's property. We do not think such an inference or conclusion was justified under this record.

The formal written lease prepared by the attorney from his notes was for the most part taken verbatim from the Des Moines standard lease. The period covered was from June 7, 1958, to January 1, 1963. The consideration of $17,500 was to be paid during the summer months at $3500 per annum. Lessee paid the first $2000 and then defaulted and surrendered the premises to the defendant-administratrix herein on November 12, 1958. The written lease provided: "* * * in consideration of the following covenants and agreements made by the Lessee to be by Lessee kept and performed", lessee would pay the compensation above set out at stated times, that lessee would "use said premises for a miniature golf course and driving range. Lessee may sell soft drinks and refreshments, but is not to operate a restau-

rant. Lessee will not permit any alcoholic drinks of any kind on said premises, the violation thereof will void this lease", and "that no mechanic's lien or any other lien shall in any manner or degree attach to or affect the rights of the lessor in and to said premises * * *." It also provided: "Lessee may grade the premises, but the ground not to be changed or graded more than one foot without the consent of Lessor" and "That at the expiration of this lease, if all rent is paid up in full, Lessee may remove personal property at his own expense." As to this last provision, the attorney's notes (Exhibit 4) state "lessee may remove *improvements* at expiration of 5 years if all rent to be paid under lease has been paid at lessee's expense." (Emphasis supplied.) The trial court was troubled by this provision and concluded it meant golf balls, clubs and other unattached apparatus. We think it referred to all installations made for lessee's benefit and use in conducting the proposed games.

Subsequent to Mr. Brown's death lessee did some grading, which seemed necessary in the southeast corner of the tract—at least desirable for its use as a driving range. Poles and lights were erected to enable after-dark use of the range; cement slabs were installed as driving platforms; crushed rock was brought in to provide auto parking and a driveway; and a small concrete block house was erected; all as disclosed by defendant's Exhibit 1. Claimants are the unpaid parties who furnished the labor and materials used in these additions. However, no miniature golf course was ever installed.

The issue as to whether a lessee under such circumstances is obligated to make improvements which may enhance the value of lessor's property, and which may within a comparatively short time become lessor's property, is troublesome to the courts. If by such an agreement there is a substantial and obvious unjust gain by lessor at the expense of laborers and materialmen, courts sometimes require little more to infer a contract between lessee and lessor which places lessor in the classification of owner under section 572.1(1), Code of 1958, relating to mechanics' liens. However, this desire to do equity should not be extended unduly, for the creditor also is required to act reasonably. To raise such implications the better rule would require claimant to show by a preponderance of the evidence that the additions or altera-

tions were in fact substantial, permanent and beneficial to the realty, and were so contemplated by the parties to the agreement.

■ III. The burden is always upon the plaintiff-claimant to prove either an express contract with or on behalf of the lessor or vendor, or else to prove such a state of facts as will give rise to an implied contract with him. Cedar Rapids Sash & Door Co. v. Dubuque Realty Co., 195 Iowa 679, 680, 192 N.W. 801. We said therein that the fact that lessor knew claimant was furnishing the material is not of itself controlling, that such knowledge did not deprive lessor "of the right in good faith" to enter into a contract with lessee, that all alterations he wished to make should be made by lessee at his own expense. We held therein no evidence of collusion nor any acts by lessor appeared which misled the plaintiff-creditor, nor was there anything shown to indicate claimant relied on lessor's credit. The court said (at page 681): "The litigants constitute the two innocent parties, one or both of whom must necessarily suffer", and did not disturb the finding for lessor.

■ In the case of Thompson Yards, Inc., v. Haakinson & Beaty Co., supra, 209 Iowa 985, 989, 229 N.W. 266, 268, we explored the problem of implied contracts in such matters and said: "To the existence of an implied contract there must be a meeting of the minds,—agreement. The agreement, however, is shown by circumstances, instead of by mutually expressed intent. The difference between implied and express contract is in method of proof. * * * 'A contract is express when the parties show their assent in words; it is implied when they show it by acts' ", citing Fouke & Lyon v. Jackson County, 84 Iowa 616, 620, 51 N.W. 71.

We concluded there that implied contracts are such as reason and justice dictate, and which, therefore, the law presumes that every person undertakes to perform. See Ottumwa Mill & Constr. Co. v. Manchester, 139 Iowa 334, 337, 115 N.W. 911. Here also we find a reference to the important question as to whether or not the so-called improvements were *necessarily of permanent value to the land.*

In Perkins Supply & Fuel Service v. Rosenberg, supra, 226 Iowa 27, 282 N.W. 371, 373, somewhat like the case at bar, although much stronger on the consent to the erection of a small

building by lessee to be used in connection with a structure already on the land, this court said on page 30 of 226 Iowa: "Reading these agreements found in the lease in their entirety, we are unable to discover an appointment of the lessees as agents to bind the lessors or their real estate for improvements the lessees might see fit to make. If it is as appellants claim the landlords consented that they, or their real estate, *should be bound in an unknown amount,* for there is no limitation in that respect." (Emphasis supplied.)

This, the court pointed out, affected the reasonableness of claimants' agency contention, and especially so where that relationship was denied in the lease itself. The conclusion reached was that claimants had failed to sustain the burden of proof of agency, and recovery was denied.

We are aware of this court's decision in Queal Lbr. Co. v. Lipman, supra, 200 Iowa 1376, 206 N.W. 627, cited by both parties. When the arrangement properly infers fraud, equity should grant relief. We find much merit in Judge Faville's dissent, which logically maintained one could not require a lessee to add substantial improvements to his property and escape liability for a mechanic's lien by a provision in the lease denying such agency by lessee. In Denniston & Partridge Co. v. Brown, supra, 183 Iowa 398, 167 N.W. 190, we clearly rejected a situation of that kind which "would open the door to great fraud."

In the case before us the arrangement does not infer fraud. From this record it does not appear that Mr. Brown contemplated the installations were to be permanent or beneficial additions to his land, or desired their retention. Thus we fail to find in the record any basis of fraud or imposition warranting a holding that an agency was created. Perkins Supply & Fuel Service v. Rosenberg, supra.

IV. The sum of the above-cited line of cases seems to be that where the contract of lease required specifically or by implication that the tenant make improvements clearly for the benefit of the lessor, the supplier of labor and materials is and should be entitled to a mechanic's lien, not only on the improvements, but on the real estate as well. See article on Mechanics' Liens, 6 Drake Law Review 1, at pages 53 and 54. We do not depart from that rule now. However, we are satisfied that

claimants failed in their burden to show that the material and labor obtained by the lessee were pursuant to such an agreement or understanding with lessor. It was claimants' burden to show lessor consented to the specific improvements, authorized them, and contemplated an increased value to his real estate thereby, or actually required them to be made. Schoeneman Lbr. Co. v. Davis, 200 Iowa 873, 876, 205 N.W. 502, and authorities cited. This claimants have not convincingly done.

We are unable to follow the trial court's conclusion that lessor Brown at any time required any improvements to his real estate. In fact, considering the record as a whole, he seemed reluctant to permit any substantial work or construction thereon. He had rented other bare land in the vicinity, including a house trailer sales court, and for an amusement park at Kiddie Land. He had not engaged in the rental of improved properties. He was only interested in obtaining a reasonable rental for his un-improved land. Apparently he was not interested in the installa-tions which would be used in operating a miniature golf and driving range, but provided lessee could remove that equipment at the expiration of the lease if the rental had been paid as agreed. Furthermore, it is not so apparent that the alleged improvements added anything to the value of that property, and in fact it would seem that the task of removing the cement block house and the concrete slabs may be a detriment. At least it is far from clear they were of any permanent value to the realty. On the other hand, we find nothing to show the reason-able rental value of this land, either with or without the so-called improvements, and although the trial court visited the premises that fact alone will not raise the inference that the $500 per acre annual rental agreed upon must have contemplated the value after the establishment of the use permitted. It may well be this was the reasonable value without additions or alterations for such a tract within the city limits. At any rate we do not find herein a sufficient showing that lessor did anything which tended to mislead the claimants or justify them in believing he had authorized lessee to act in his stead or make substantial improve-ments on the land for his benefit. They never once contacted lessor or the defendant-administratrix concerning their credit extensions. Surely lessor, Brown, so ill he died within a week,

400

was not engaged in the sharp practice we have condemned in previous equity cases, i.e., that a lessor or vendor may gain value of his property through a lease arrangement to the detriment of claimants who furnish labor and material for the improvements. The most this record reasonably discloses is that equipment could be brought on the premises to enable the games to be played, and that lessor did not wish to retain it except as any landlord retains personal property brought on his property by a lessee who fails to pay the rent.

We are, therefore, satisfied this case does not fall within propositions found in Denniston & Partridge Co. v. Romp, supra, 244 Iowa 204, 56 N.W.2d 601, and other decisions referred to by claimants, where the evidence clearly indicates an understanding or working agreement between lessor and lessee by which a specific and certain improvement beneficial to the owner-lessor was to be made by lessee.

It is unfortunate claimants did not take greater pains to secure their credit extension to lessee, but we think it would be unjust under this record to infer an agency or to hold lessor's property for these indebtednesses due to fraud. Therefore, the judgment shall stand against lessee, but is reversed as to the establishment and foreclosure of their mechanics' liens against the property of lessor, Louis P. Brown, deceased.—Reversed.

All JUSTICES concur.