SOCIETY LINNEA, appellee, v. JOHN A. WILBOIS, defendant, RHINER BROS. PLUMBING COMPANY and JEWETT LUMBER COMPANY, defendants-appellants.

No. 50513.

954

March 6, 1962.

Rehearing Denied May 8, 1962.

Neiman, Neiman & Stone and Lorna L. Williams, all of Des Moines, for defendant-appellant Jewett Lumber Company.

Wilson, Maley & Stamatelos, of West Des Moines, for defendant-appellant Rhiner Bros. Plumbing Company.

Eskil C. Carlson, of Des Moines, for plaintiff-appellee.

Larson, J.—In the light of our many cases dealing with the rights and priorities of mechanic's lien claimants, it would indeed be hard to imagine a more complex case than the one presented here. It involves a defendant owner of a three-plex apartment house, now bankrupt, who first considered and later purchased the premises, then a run-down vacant rooming house, for $2600. Before his leap into this none-too-profitable venture, he contacted the plaintiff for a loan sufficient to purchase the

property, pay off a mortgage thereon, and to do minor remodeling, a plumbing company to inspect the premises and advise him as to the adequacy of sewer and water connections and other needed plumbing and heating repairs, and a lumber company to see if it would sell him material needed for repairs on an open account should he decide to buy the property.

Being encouraged by all parties, he made the purchase November 6, 1958, with funds from plaintiff's loan of $3500. The deed and plaintiff's mortgage for that sum were duly recorded on the same date. Unknown to the former nonresident owner, he had taken full possession of the house, had ordered certain lumber and material be delivered thereto on October 21, 1958, and had commenced work on the roof and porch some 16 days before receiving the deed.

This set the scene for the issues presented, (1) as to whether the defendant Wilbois had any such beneficial interest in the property at the time the defendant materialmen agreed to and did furnish him labor and material to improve and repair the premises, as would entitle them to a valid mechanic's lien when he later acquired the title therefor, and (2) if so, would such liens be prior to certain mortgages of record given to secure funds with which to purchase and improve the property? The trial court held no valid mechanic's lien could arise under the circumstances until material and labor were furnished under a contract with Wilbois *after* he obtained a beneficial ownership or title therein and that prior to November 6, 1958, Wilbois was not such an "owner". We must agree.

The salient facts are not in dispute. The defendant Wilbois on September 9, 1958, through a real-estate broker submitted an offer to buy the property known as 1059 Ninth Street for $2600, but this offer was not accepted. The amount seemed to be satisfactory, but the out-of-state owner demanded a cash deal. Sometime later Wilbois applied to plaintiff for a loan of $3500, proposing to buy and repair the premises therewith. After an inspection of the property by its officers the plaintiff told him to go ahead. In the meantime Wilbois had contacted the defendant Rhiner Brothers Plumbing Company, and, having secured permission from the real-estate broker, had them probe the sewer and water connections and remove some cellar pipes to

permit excavation estimates. Almost four hours were spent in this work. At that time it was made quite clear that Wilbois did not own the place but that in case he decided to buy the property the Rhiner Brothers would get the plumbing and heating work found necessary and desired, on a cost-plus basis. No other work was done by this defendant on that property until March 15, 1959.

I. The trial court found the inspection work done in October 1958 before Wilbois actually purchased the property was no part of the plumbing and heating agreement under which the repair, remodeling and improvements were done, that each of these jobs stood alone under separate agreements and could not be joined to extend the period within which a mechanic's lien could be established. This factual conclusion is hard to refute and we are satisfied it was correct.

The objects of each employment were separate and distinct, and were so intended and understood by the parties. When the inspection work was done in October, obviously credit was not extended beyond that of the employer, and his title or present interest in that property was not involved. In fact his disclosed interest at that time was no more than that of an interested looker. The first service rendered was personal and advisory only.

This issue is governed by our decision in Casler Electric Co. v. Carlsen, 249 Iowa 289, 86 N.W.2d 682, and authorities cited therein. There as here the record clearly established that the claimant actually furnished work and material under two separate contracts, and we held they could not be joined together to extend the time for filing under the mechanic's lien law. The same rule applied here, and defendant cannot be permitted to join these two work agreements to establish an earlier date of commencement for his plumbing and heating work rendered later. The date of commencement for mechanic's lien purposes obviously was March 15, 1959, and was not prior to plaintiff's mortgage liens.

II. The situation as to the defendant Jewett Lumber Company is factually somewhat different. Here, prior to his decision to buy, Wilbois talked over the contemplated purchase and improvement with the officers of the Jewett Lumber Company,

and they agreed to furnish lumber and material for the work at the then-quoted price less discount and to extend credit for the job. Nowhere does it appear that the Jewett Lumber Company was ever advised that Wilbois *had* bought the property. When it received an order and sent material to the premises on October 21, 1958, it apparently assumed Wilbois had obtained either a deed or had executed a contract to buy the property.

While no material was furnished for this job from November 6, 1958, until November 24, 1958, and Wilbois had paid for that furnished him prior to November 6 in the sum of $294.87, it is the contention of the defendant Jewett Lumber Company that because this was an open account the material furnished after November 24 in the sum of $1593.41 is a part of a single transaction. Thus it maintains the commencement date was October 21, 1958. Any payments made thereafter by Wilbois it says were received on account. The trial court thought otherwise and established a junior lien in the Jewett Lumber Company for only the unpaid $1593.41.

When Wilbois obtained his deed November 6, 1958, he commenced excavation work. It then became apparent much more money would be needed to make even the minimum repairs and improvements. At his request, plaintiff loaned him an additional $5000 and recorded its mortgage for that amount November 20, 1958, which was four days prior to the time the defendant Jewett Lumber Company furnished any material subsequent to November 6, 1958.

It is plaintiff's position that, since the Jewett Lumber Company could obtain no lien for the material furnished when Wilbois had no title or beneficial interest in the property, it could not make retroactive the agreement under which material was furnished after November 24, 1958, by claiming it was a part of an open running account opened with Wilbois October 21, 1958. It was the trial court's position that there were two contracts involved, the first where the lumber company legally was compelled to look solely to Wilbois for its money, and the second after November 24, when, under the statute, it could look to the property as well. While it seems the circumstances warrant such a separation, the books of the lumber company show it did not carry two accounts, but only one open account, running from

the date material was first sent to the premises. It took a chance that Wilbois at the time of the first orders had a sufficient beneficial interest to sustain an agreement with him to furnish that material for that property. It was factually mistaken. This presents the problem as to whether material furnished Wilbois under the agreement shown here at a time when he was not an "owner" entitled the Jewett Lumber Company to a lien when he later became the "owner". We think not, for usually a lien on the property can only be established for improving materials furnished on open account after the one contracting therefor became the "owner".

Some beneficial ownership in real property by one who receives the benefit of labor and material under a contract, express or implied, has always been held a necessary element to the establishment of a mechanic's lien in Iowa. Cassaday v. DeJarnette, 251 Iowa 391, 394, 101 N.W.2d 21; Denniston & Partridge Co. v. Romp, 244 Iowa 204, 56 N.W.2d 601; Murray v. Kelroy, 223 Iowa 1331, 275 N.W. 21; Queal Lumber Co. v. Lipman, 200 Iowa 1376, 206 N.W. 627; Queal Lumber Co. v. McNeal, 226 Iowa 637, 284 N.W. 482; Knapp v. Baldwin, 213 Iowa 24, 238 N.W. 542; Crawford-Fayram Lumber Co. v. Mann, 203 Iowa 748, 211 N.W. 225; Schoeneman Lbr. Co. v. Davis, 200 Iowa 873, 205 N.W. 502; American Tr. & Sav. Bk. v. West, 214 Iowa 568, 243 N.W. 297; Royal Lumber Co. v. Hoelzner, 199 Iowa 24, 201 N.W. 53; Eclipse Lbr. Co. v. Murphy Co., 206 Iowa 1280, 221 N.W. 930; 45 Iowa Law Rev. 813–815, 816–818; Drake Law Rev., Volume 6, December, Number 1, page 51; 36 Am. Jur., Mechanics' Liens, section 84, page 68.

While it is true we have found various beneficial interest in real property sufficient to support a lien, and have been generous at times in finding an implied contract between an "owner" and a materialman, we have never it seems established a lien without some contract or agreement express or implied with one presently possessed with such an interest.

In the early case of Redman v. Williamson, 2 (Clarke) Iowa 488, we held where a contract was made with a person having no title or interest in the land, the mechanic could not enforce a lien. A mere possession without right or interest to or in the realty was not sufficient. Reed and Downs v. Houston and Hunt,

12 Iowa 35, affirmed the Redman case pronouncement. On the other hand, contracts express or implied with one with a beneficial interest at the time gave rise to such lien rights. American Trust & Savings Bank v. West, supra, 214 Iowa 568, 243 N.W. 297. In Monroe v. West, 12 Iowa 119, 122, 79 Am. Dec. 524, the "owner" had a bond for a deed at the time of the contract for services.

It is plaintiff's contention that as Wilbois was not the "owner" when the material used in the repairs was delivered prior to November 6, 1958, no valid mechanic's lien covering that material exists. We have often discussed the statutory definition of "owner". Section 572.1, Code, 1958. It has been said the term embraces the ordinarily accepted meaning of the word, and also includes every person "for whose use or benefit" the improvement is made. However, we have never extended it beyond the case where the titleholder or holder of some beneficial interest in the property in some manner agrees to the making of certain improvements on the property. Schoeneman Lumber Co. v. Davis, supra, 200 Iowa 873, 205 N.W. 502; Denniston & Partridge Co. v. Romp, supra, 244 Iowa 204, 56 N.W.2d 601, and cases cited therein.

A mechanic, of course, relies upon a contract express or implied and must show it in order to entitle him to a lien. Whatever he may do under such contract dates, as to his lien, from the day he commences work or furnishes material and not from the date of the performance of the several parts to his undertaking. For this purpose the contract is an entirety. Monroe v. West, supra. Its enforcement is not an action in rem; it must be commenced against a defendant by name, and can only arise by virtue of an agreement with an owner, or one who at that time had an estate or interest in the land. When so established the lien extends to the whole of his interest or estate. Section 572.1, Code, 1958. However, we have often said proof that the "owner" merely knew of or consented to the making of an improvement will not satisfy the requirement of an agreement with the one holding title or having a beneficial interest in the property. Cassaday v. DeJarnette, supra, 251 Iowa 391, 101 N.W.2d 21, and citations. Queal Lumber Co. v. Lipman, supra, 200 Iowa 1376, 206 N.W. 627.

We are satisfied the general rule in this state is that in order for one to obtain a valid mechanic's lien against realty, material or labor must be furnished for an improvement or repair thereon, pursuant to a contract or agreement express or implied, with the *then* titleholder or one holding a *present* beneficial interest therein. Section 572.2, Code, 1958.

The only exception to that rule we have been able to find appears in Floete v. Brown, 104 Iowa 154, 158, 73 N.W. 483, 65 Am. St. Rep. 434, where materials for improvements were furnished to one in possession of the land on his false representation that he owned it or had an interest therein to which a lien could attach. When he later acquired a life estate in the property and more materials were thereafter furnished under the same contract, the court permitted a lien against the life estate interest under an estoppel theory. We have no such misrepresentation here and find no cause to reach back to October 21, 1958, and make those items furnished prior to November 6 a part of a lien which was established under the agreement with the owner. Thus, in this case, the lien commencement date could only start after November 6, or on November 24, 1958.

Before November 6, 1958, Wilbois was not the "owner" and had not represented himself as owner. Any agreements express or implied he had with the Jewett Lumber Company who furnished material prior to that date could result in no lien against the interest he then had in this property, for he had none. A hope or expectation that his offer would be accepted was not sufficient. Of course no agreement express or implied was shown between the materialmen and the out-of-state owner, and it clearly appears the owner never knew of this work being done. Crawford-Fayram Lbr. Co. v. Mann, supra; Joyce Lbr. Co. v. Wick, 200 Iowa 796, 205 N.W. 476.

Under this record the commencement date of the Jewett Lumber Company lien was not October 21 or November 6, but November 24, 1958. From that date its lien for materials furnished on open account pursuant to an agreement with Wilbois, then an "owner", should be established and the trial court was correct in its finding that plaintiff's mortgage liens were prior to that of the Jewett Lumber Company.

III. While it is true plaintiff knew Wilbois was not the owner of the property when he commenced the repair work, there is nothing in this record to indicate it did any act which would tend to mislead the defendants as to Wilbois' interest in the property prior to the deed. On the contrary it appears plaintiff only advanced Wilbois funds so that he could pay for certain materials and labor he needed for outside work before bad weather came, and before the purchase transaction could be completed. Certainly nothing appears that would estop plaintiff from exercising its right to prior liens in the matter, and none is claimed by defendants.

Having found no error in the trial court's judgment the same must be and it is affirmed.—Affirmed.

All JUSTICES concur except BLISS, J., not sitting.