NORTHWESTERN NATIONAL BANK
OF SIOUX CITY, Appellee,

v.

METRO CENTER, INC.; Iowa Public Service Company; Raymond G. Alvine & Associates, Inc.; Beam & McIntosh; Maurices Iowa Inc.; Audino Construction Company and Audino-Donovan; City Council of Sioux City; The City of Sioux City, Iowa; Woodbury County, Iowa; The State of Iowa and The Iowa Department of Revenue; The United States of America; J. Myron Olson and Sons, Inc.; Gerald F. Hoffman, d/b/a Consultants to Management International, Ltd.; Consultants to Management International, Ltd; Metz Baking Company, and Security National Bank of Sioux City, Iowa, Defendants,

Audino Construction Company,
Appellant.

No. 64676.

Supreme Court of Iowa.

March 18, 1981.

As Corrected April 9, 1981.
Rehearing Denied April 10, 1981.

James W. Redmond and Thomas M. Plaza of Gleysteen, Harper, Eidsmoe, Heidman & Redmond, Sioux City, for appellant.

Steven A. Carter of Carter & Sar, Sioux City, for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, LARSON and SCHULTZ, JJ.

LARSON, Justice.

An extensive Sioux City urban redevelopment project, commenced with great enthusiasm and optimism, sputtered and eventually died. The site, intended for construction of a large shopping center, was dubbed the "Brandeis hole" when construction stopped at the excavation stage. The corporation charged with the development of the project, Metro Center, Inc., had borrowed money from the Northwestern Na-

tional Bank of Sioux City. Audino Construction Company, and others, supplied labor and material for the project and claimed mechanics' liens under chapter 572, The Code 1979. This appeal, which involves only Audino and the bank, raises these issues: (1) was Audino entitled to a mechanic's lien on the property, and (2) if so, was it entitled to priority over the bank's mortgage under section 572.18?

The trial court noted that the principals of Audino Construction Company, Joseph and Frank Audino, were also shareholders and directors of Metro Center, Inc., the owner, which in its mortgage to the bank had certified that no liens existed on the property. The court, "piercing the corporate veil," held it would be inequitable to allow enforcement of the Audino lien under the circumstances. The court held that in any event no lienable activities had been performed by Audino because its services did not result in an "improvement" on the premises under section 572.2.

Audino's cross-claim for foreclosure of its mechanic's lien was rendered moot by the trial court's conclusion it was not entitled to assert a lien. Audino now challenges the court's ruling it was not entitled to assert the lien and requests a determination that its lien is entitled to priority over the bank's mortgage, under section 572.18, because its work on the property commenced before the mortgage was recorded. Because our review is de novo, we must examine the whole record and determine the parties' rights anew from the evidence presented. See *Ringland-Johnson Crowley Co. v. First Central Service Corp.*, 255 N.W.2d 149, 151 (Iowa 1977). We conclude that Audino was entitled to assert its mechanic's lien and that it is entitled to priority over the mortgage. Accordingly, we reverse and remand for further proceedings by the trial court.

The underlying facts are largely without dispute. The land in question was acquired by the city of Sioux City for redevelopment as a part of its extensive urban renewal project. Metro Center, Inc. was formed by Joseph and Frank Audino, with four others, for the purpose of the redevelopment of the land in question. On February 4, 1974, Metro entered into a detailed "Contract for Sale of Land for Private Development" with the city, under which Metro agreed to construct the shopping center in accordance with approved plans and specifications and under which the city agreed to demolish the buildings and convey title to the land to Metro. On February 12, 1976, Metro, as owner, and Audino, as general contractor, entered into a contract for construction of the center. Thereafter, various work was done on the premises, some by Audino and some by other contractors. It was Audino's work done prior to recording of Northwestern's mortgage on November 15, 1976, which, it says, gives it priority over the bank's mortgage under section 572.18.

Section 572.18 provides in part:

Mechanics' liens shall be preferred to all other liens which may attach to or upon any building or improvement and to the land upon which it is situated, *except liens of record prior to the time of the original commencement of the work or improvements* . . . .

(Emphasis added.)

The bank counters that no lienable services were performed before the recording of the mortgage and further, because Metro was not the owner of the land until November 15, 1976, no prior services under a contract with it could be the basis for a lien.

## I. Dual Status of Audino Construction Company.

■ Joseph and Frank Audino have been in the construction business in Sioux City since 1957. In 1974 they joined four other persons to form Metro Center Inc., investing $10,000 each. These six were later joined by a seventh person who became the president of Metro as well as a shareholder and director. The sole purpose of Metro's formation was to provide a vehicle through which to take title to the urban renewal project and to complete the proposed improvements. It is undisputed, moreover, that the only reason the Audino brothers became involved in Metro was to assure their participation in the project as general

contractors. From August, 1975, until November 15, 1976, the bank had advanced funds to Metro on the project without taking security in the real estate. On that date, Metro executed a note for $438,000 to cover the sums previously borrowed, as well as funds with which to acquire a deed from the city and $50,000 to continue development. This loan was secured by a mortgage. The mortgage contained this provision:

> Said Mortgagors hereby covenant with Mortgagee, or successor in interest, that said Mortgagors hold clear title to said personal property, and title in fee simple to said real estate; that they have good and lawful authority to sell, convey and mortgage the same; that said premises are Free and Clear of all Liens and Encumbrances Whatsoever except as may be above stated; and said Mortgagors Covenant to Warrant and Defend the said premises and the said personal property against the lawful claims of all persons whosoever, except as may be above stated.

The bank argues, and the trial court held, that this covenant of Metro was in effect the covenant of its shareholders, including the Audino brothers. It held it would be inequitable to allow the Audinos to retain the benefits of the mortgage loan obtained on the strength of the no-lien covenant and still pursue their mechanic's lien. The Audino Company argues that they were separate entities and the acts of Metro cannot be deemed to be the acts of Audino. Further, it argues that as of the date of the mortgage, November 15, 1976, there were no mechanic's liens because the first lien was *filed* after that date. We may summarily resolve the last argument: the mechanic's lien arises upon furnishing of labor or material; not upon its filing. If lienable labor or material was furnished on the project prior to the mortgage recordation, as Audino claims, there was at least one mechanic's lien in existence, despite the fact that no lien statement had been filed. *See Society Linnea v. Wilbois*, 253 Iowa 953, 959, 113 N.W.2d 603, 606–607 (1962) (lien effective "from the day [the workman] commences work or furnishes material"). The lien in such case actually predates the filing, which then relates back to the date of commencement. *See* 57 C.J.S. *Mechanics' Liens* § 177, at 730 (1948).

We must assume then, that Metro's covenant did not state the true situation with regard to the existence of liens as of the date of the mortgage. We must determine what effect, if any, that has upon Audino's right to pursue its lien. The trial court held the overlapping of interests by the Audinos was sufficient in itself to void any liens presented by them.

■ We have said that central to corporate law is the concept that a corporation is an entity separate and distinct from its shareholders. *Briggs Transportation Co., Inc. v. Starr Sales Co., Inc.*, 262 N.W.2d 805, 809 (Iowa 1978). The separate-entity concept of the corporation may be disregarded "under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Id.* at 810. The Court of Appeals for the Eighth Circuit, in applying Iowa law in a diversity case, said the factors to be considered when contemplating in "piercing of the corporate veil" were whether the corporation (1) was undercapitalized, (2) was without separate books, (3) had mingled personal and corporate assets, (4) was used to promote fraud or illegality, or (5) was merely a sham. *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 638 (8th Cir. 1975).

■ The trial court here apparently assumed the existence of elements requisite to piercing the corporate veil of Metro Center, Inc. Upon our examination of the record, we conclude the requisite elements were not established. The bank makes no claim of fraud, and there is no evidence that the corporation was established for such a purpose; to the contrary, the corporation was apparently established, pursuant to redevelopment regulations, to be the en-

tity responsible for development of the project. No claim was made that Metro was undercapitalized; the Audinos and Metro maintained separate bank accounts, apparently in separate banks; complete records were maintained; and there was no commingling of assets. The bank does not contend Metro was a sham or shell, and we find no evidence to support a finding that it was.

■ Even assuming that an equity court will exercise greater latitude in piercing the corporate veil, see 18 Am.Jur.2d *Corporations* § 14, at 560–61 (1965), we may not presume the existence of fraud or injustice from the circumstances of this case. The Metro Center corporation was a separate and distinct entity, and the mortgage executed by its president was not a mortgage by Audinos, who owned only two-sevenths of its stock. Further, the covenant of no liens cannot be claimed to have misled the bank, whose officers were well aware of the extent of work done on the premises prior to November 15, 1976; they were in touch with developments on the property on a virtual day-to-day basis.

■ We conclude it was error under the facts of this case for the trial court to hold Audino Construction was not entitled to enforce its lien because of Joseph and Frank Audino's participation in Metro Center, Inc.

## II. Was Audino's work lienable?

The trial court held that Audino Construction had not performed any work on the premises which could provide the basis for a mechanic's lien. Because the mechanic's lien is a statutory creation, we must determine the applicability of chapter 572. Section 572.2 describes the work which will qualify for a lien:

> Every person who shall furnish any material or labor for, or perform any labor upon, any building or land for improvement, alteration, or repair thereof, including those engaged in the construction or repair of any work of internal or external improvement, and those engaged in grading, sodding, installing nursery stock, landscaping, sidewalk building, fencing on any land or lot, by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor shall have a lien upon such building or improvement, and land belonging to the owner on which the same is situated or upon the land or lot so graded, landscaped, fenced, or otherwise improved, altered, or repaired, to secure payment for material or labor furnished or labor performed.

While section 572.2 was previously construed strictly because it was in derogation of the common law, this is no longer true because of section 4.2, The Code, which states: "[P]rovisions and all proceedings under [the Code] shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice." *See Gollehon, Schemmer & Associates, Inc. v. Fairway-Bettendorf Associates,* 268 N.W.2d 200, 201 (Iowa 1978). The labor in *Gollehon* for which the lien was claimed was performed by an architect who surveyed the premises, marked its boundaries with metal pins and lathes, and marked the existence of easements. He also produced plans and specifications for the project. However, because the project was abandoned, they were never used. This court held that, because the theory of the mechanic's lien is that the improvements constitute visible notice of the furnishing of labor and material, if no actual, visible improvement exists, there is no lien. The markers placed on the premises were to assist in surveying the property; while they were visible evidence of the architect's work, we held they did not "improve" the land within the meaning of the statute. They were preliminary to, rather than part of, the contemplated improvement. *Id.* at 201-202.

■ Audino's services before the recording of the mortgage, which it contends are lienable, include:

(1) constructing a large sign, approximately eight feet by twelve, in accordance with the architect's specifications, to advise the public of the nature of the project and identifying the firms participating;

(2) moving large concrete pads with a front-end loader so a utility company could move a steam line on the premises;

(3) placing a fence around the project;

(4) constructing a parapet wall on an adjoining building, apparently to prevent roof water from running onto the redevelopment project;

(5) excavating for piling tests to be made by a testing laboratory;

(6) "spen[ding] 127 man hours from May 7, 1976, to November 12, 1976."

While some of these activities present close questions others are clearly not proper bases for a mechanic's lien: the sign, while it provided notice to the public that an improvement was to be placed on the premises, was not a part of the improvement, nor was it analogous to plans which are eventually incorporated into an improvement. It was strictly collateral to it and would always remain so. The fence around the project was similarly not a part of the improvement. In fact, it appears to have been necessitated by the demolition process undertaken by the city, not by the actual construction. The parapet wall cannot be a basis for a lien because it was not constructed on the premises and could, therefore, never be a part of the improvement. Excavation for piling tests was similar to the staking in *Gollehon*; it was preliminary to the construction, to allow finalization of the plans; it was not a part of the construction.

The moving of the steam line, on the other hand, was an activity required by the plans. An underground line, it was located approximately five feet above the lower level of the shopping center. Audino, at Metro Center's request, assisted the utility company in moving the line. The bank argues that this work was not substantial enough to give rise to a lien because Audino merely moved overlying concrete pads so the utility company could move the underground line. We conclude that Audino assisted in the moving of the line by moving the overlying concrete pads, that this was necessary as part of the construction of the project, and that Audino's work was done

prior to the recording of the bank's mortgage. It is true this was not a substantial project in itself, but it was an "actual, visible" activity, *Gollehon*, 268 N.W.2d at 202, and was done pursuant to the general plans for the project. This is sufficient for establishment of a mechanic's lien. *Id.*

■ The trial court held that no "improvement" was ever made to the property. It is true that the proposed building was never built and, in fact, no footings were even built. This case, however, is distinguishable from *Gollehon* where the project was abandoned at the planning stage. Here, there was substantial excavation by Sioux City Sand & Gravel Co., Audino's subcontractor, in May of 1977. The bank contends that whatever the work was, it has now been obscured by the subsequent filling and seeding of the site. It was established, however, that in excess of $97,000 worth of excavating was done in pursuance of the plans for completion of the project before the project was stopped. The bank claims this was "window dressing" to give the project the appearance of vitality at a time when parties involved in the project and the public were becoming skeptical. While this was apparently one reason for the *timing* of the excavation, we believe the reason for the excavation, we believe the reason for the excavation was to further the planned project.

Audino's furnishing of labor and equipment preparatory to excavation and in accordance with plans for the project preceded recording of the bank's mortgage and, under section 572.18, The Code, its mortgage is to be accorded priority.

*III. Metro's lienable interest predating November 15, 1976.*

■ The bank contends that even if Audino had performed labor on the site before November 15, 1976, it was not pursuant to a contract with the owner because the deed was not delivered until November 15, 1976. Metro, however, was a contract purchaser under the redevelopment contract of February, 1974. It had sufficient interest in the real estate as a contract vendee to provide a basis for a mechanic's

lien. § 572.1(1), The Code 1979 ("[o]wner" under mechanic's lien statute "shall include every person for whose use or benefit any . . . improvement is made"); *Society Linnea v. Wilbois*, 253 Iowa 953, 958, 113 N.W.2d 603, 606 (1962) ("some beneficial ownership" by party receiving benefit of labor or material under a contract required); *see generally* Stone, *Mechanic's Liens in Iowa*, 30 Drake L.Rev. 39, 47–49 (1981) (contract vendee has sufficient beneficial interest to be lienable).

### IV.   *Audino's procedural status.*

The bank raises a procedural argument going to the right of Audino to obtain any relief. Audino asserted a cross-claim against Metro, a co-party, as provided in Iowa Rule of Civil Procedure 33. The bank argues that no notice was served on it, that the cross-claim is therefore not in the case, and that it is too late to seek foreclosure of the lien by a new proceeding. It also contends the trial court did not have jurisdiction of the subject matter because there was no "proper commencement of an action to foreclose the lien claim"; Audino, in asking for *in rem* judgment against the property was thus "limited as to the remedies that might be granted by the . . . . district court or by the Supreme Court." In *Society Linnea v. Wilbois*, 253 Iowa at 959, 113 N.W.2d at 607, we said that an action on a mechanic's lien is an action on a contract; its enforcement is therefore not an action *in rem* but must be commenced against a named defendant. The rationale of the holding in *Society Linnea* that an action for foreclosure of a mechanic's lien must be directed to a named defendant, not the property, was that it must be referable to a contract with some person with a beneficial interest in the property; a claim against the property in the absence of such contract could not be maintained. *Id.* The present case is distinguishable; here there was a contract between the contractor and a party having a beneficial interest. Moreover, regardless of whether the judgment sought was described as "in rem," the real thrust of the cross-claim is clear: it asks for foreclosure of the lien and a declaration of

its priority. We must view the cross-claim in a common-sense manner. *See* Iowa R.Civ.P. 67 (all pleadings to be "construed and enforced to secure a just, speedy and inexpensive determination of all controversies on their merits"); Iowa R.Civ.P. 69(a) (pleadings, including cross-claims, merely required to contain a "short and plain statement of the claim" and may seek relief in the alternative or of several different types). The cross-claim is sufficient if it apprises of the incident out of which the claim arose and the general nature of the action. *Soike v. Evan Matthews and Company*, 302 N.W.2d 841, 842 (Iowa 1981); *Lamantia v. Sojka*, 298 N.W.2d 245, 247 (Iowa 1980). Here, the facts giving rise to the claim were clearly stated, as well as the relief sought: foreclosure of the lien and a declaration of its priority. The bank could not claim it was misled. The words "in rem" in requesting judgment were mere surplusage. The issues of priority and enforcement of the mechanic's lien are properly presented. The cross-claim, having been included in Audino's answer, was within the jurisdiction of the court. Contrary to the bank's claim, the court did not lack subject-matter jurisdiction on the cross-claim.

We conclude Audino Construction Company's lien has been established as superior to the mortgage to the Northwestern National Bank. This case is reversed and remanded for determination of the amount of Audino's lien and for entry of a decree in accordance with this ruling.

REVERSED AND REMANDED.