# IN THE SUPREME COURT OF IOWA

No. 20–0972

Submitted March 24, 2022—Filed June 17, 2022

**BORST BROTHERS CONSTRUCTION, INC.,**

Appellee,

vs.

**FINANCE OF AMERICA COMMERCIAL, LLC**

Appellant.

———————————————————

**FINANCE OF AMERICA COMMERCIAL, LLC,**

Appellant,

vs.

**THOMAS DOSTAL DEVELOPERS, INC.,** and **RANDY T. DOSTAL,**

Appellees,

and

**KELLY CONCRETE COMPANY, INC.,** AFFORDABLE HEATING AND COOLING, INC., 5 STAR PLUMBING, INC., and **BORST BROTHERS CONSTRUCTION, INC.,**

Appellees,

———————————————————

**BORST BROTHERS CONSTRUCTION, INC.**

Appellee,

vs.

**FINANCE OF AMERICA COMMERCIAL, LLC,**

Appellant.

———————————————————

**FINANCE OF AMERICA COMMERCIAL, LLC,**

Appellee,

vs.

**THOMAS DOSTAL DEVELOPERS, INC.,** and **RANDY T. DOSTAL,**

Appellants,

and

**KELLY CONCRETE COMPANY, INC.,** DARNELL HOLDINGS, LLC d/b/a DARNELL CONSTRUCTION, AFFORDABLE HEATING AND COOLING, INC., 5 STAR PLUMBING, INC., **BORST BROTHERS CONSTRUCTION, INC.,** and KEN-WAY EXCAVATING SERVICE, INC.,

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

A commercial lender seeks further review of a court of appeals decision affirming the validity and superiority of certain mechanics' liens. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART ON APPEAL, AFFIRMED ON CROSS-APPEAL.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Appel and Waterman, JJ., joined. McDermott, J., filed a dissenting opinion, in which McDonald and Oxley, JJ., joined.

John F. Fatino of Whitfield and Eddy, P.L.C., Des Moines, for appellant Finance of America Commercial, LLC.

Matthew L. Preston, Brad J. Brady, and David T. Meyers (until withdrawal) of Brady Preston Gronlund PC, Cedar Rapids, for appellee Borst Brothers Construction, Inc.

S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, for appellees Thomas Dostal Developers, Inc. and Randy T. Dostal.

William H. Roemerman of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellee Kelly Concrete Co., Inc.

**MANSFIELD, Justice.**

### I. Introduction.

Since 2012, Iowa has used a centralized, internet-based registry for mechanics' liens. To assure the smooth functioning of this registry, and also assure that homeowners and buyers are aware of the risk that such liens may be placed on a property, general contractors and owner-builders are supposed to post a notice of commencement of work to the central registry within ten days of starting work on a residential construction project. If that doesn't occur, a subcontractor may nonetheless post the notice. Indeed, if no notice has already been posted, a subcontractor must do so before posting a preliminary lien notice and obtaining a mechanics' lien.

In this case, an owner-builder didn't post notices of commencement on the registry for five residential lots that it was developing. Accordingly, two subcontractors did so, several months after the construction work had actually begun. When the project went into default, a priority dispute arose between these two subcontractors and the commercial lender for the project. The commercial lender claimed that its previously recorded mortgages had priority; the subcontractors argued that their mechanics' liens came first. The district court found in favor of the subcontractors, as did the court of appeals. We granted the lender's application for further review.

We now agree with the courts below and conclude that the 2012 law didn't change the principle that mechanics' liens will, in some circumstances, have priority over previously recorded mortgages. We also conclude that the ten-day

deadline for posting the notice of commencement to the registry applies to general contractors and owner-builders but not to subcontractors. While the statutory language in isolation is potentially ambiguous, context provides clarity. It wouldn't make sense to allow subcontractors to step in only if the general contractor or owner-builder fails to post the notice of commencement within ten days, while requiring subcontractors to meet the same ten-day deadline. Meeting a missed deadline is impossible.

For these reasons, we affirm the decision of the court of appeals and the judgment of the district court on the questions of lien validity and priority in this case. On the remaining appellate issues, we let the decision of the court of appeals stand, although we modify its reasoning on one evidentiary point.

**II. Background Facts and Proceedings.**

**A. Background Facts.** This case concerns a residential property development project in Cedar Rapids known as Hawks Point Seventh Addition. Five of the thirty-two lots are at issue here: Lots 5, 6, 7, 8, and 10. Thomas Dostal Developers, Inc. owned these properties and served as general contractor for their development.

In November and December 2017, Dostal Developers entered into five commercial loans with Finance of America Commercial (FAC)—one loan for each property. All five loans were memorialized by promissory notes, secured by

mortgages, and secured also by guarantees signed by Randy Dostal.[1] The following table shows the amounts and dates of the five loans:

| Lot # | Principal Amount ($) | Documents Signed | Mortgage Recorded |
|---|---|---|---|
| 5 | 153,000 | 11/10/17 | 11/13/17 |
| 6 | 141,750 | 11/10/17 | 11/13/17 |
| 7 | 149,250 | 11/10/17 | 11/13/17 |
| 8 | 170,250 | 11/10/17 | 11/13/17 |
| 10 | 153,000 | 12/20/17 | 12/20/17 |

By February 2018, Dostal Developers stopped making payments on these loans. In August, FAC sent notices of default and acceleration. Dostal Developers did not cure the defaults.

Meanwhile, Dostal Developers had hired several subcontractors to work on the properties, including Borst Brothers Construction and Kelly Concrete Company. Borst put in sanitary and storm sewers, installed the water main, created a temporary rock road, and graded the site. Borst's work began on July 3, 2017, and ended on December 19, 2017. Kelly performed various concrete jobs between September 2017 and January 15, 2018.

Dostal Developers never posted a statutory "notice of commencement of work" to the Iowa Mechanic's Notice and Lien Registry (MNLR) to provide notice of contracting with subcontractors. *See* Iowa Code § 572.13A(1) (2018). Instead,

---

[1]Randy Dostal was the president of Dostal Developers. He signed the guaranties for Lots 5, 6, 7, and 8 as "Randy T. Dostal." The Lot 10 guaranty was signed "Thomas T. Dostal Dev." But the text of all the guaranties refers to "Randy T. Dostal" as the "Guarantor."

Kelly posted notices of commencement for four of the lots on February 1, 2018.[2] Kelly also posted preliminary notices and mechanics' liens that same day. *See id.* §§ 572.8(1), .13A(2), .13B(1). The following day, February 2, Borst posted a notice of commencement and a mechanics' lien for all of the Hawks Point properties it had performed work on.

**B. The Borst–Kelly Foreclosure Action.** Neither Borst nor Kelly received full payment for their work. On September 12, Borst filed a petition to foreclose its mechanics' lien in Linn County District Court, alleging Dostal Developers still owed it $198,316.59 plus interest.[3] Borst named other lien holders as parties, including FAC and Kelly.

Kelly filed an answer, cross-claim, and counterclaim on October 12. It asserted that its mechanics' liens had first-priority status and requested foreclosure of those liens in the amount of $39,236.21 plus interest.

On October 17, FAC moved to dismiss the claims of Borst and Kelly. As to Borst, FAC asserted that it had not posted a timely notice of commencement of work as required by Iowa Code section 572.13A(2) or a preliminary notice as required by section 572.13B(4). Borst responded by posting its preliminary notice on November 8. As to Kelly, FAC argued that if Kelly were a subcontractor, it had not perfected its liens until February 1, 2018, and, therefore, they were inferior to FAC's mortgages as a matter of law.

---

[2]The district court found that Kelly failed to file a notice of commencement for the work performed on Lot 10.

[3]Borst later reduced its demand to $143,316.59.

**C. The FAC Foreclosure Action.** On November 26, the district court denied FAC's motions to dismiss in the Borst–Kelly lien foreclosure action to allow for further development of the parties' positions. By then, FAC had filed its own petition to foreclose its mortgages in the Linn County District Court. Therein, FAC alleged that its mortgages had priority over any mechanics' liens of Borst and Kelly. FAC also named Randy Dostal individually as a defendant, asserting that he was personally liable as a guarantor of FAC's loans. In total, FAC claimed to be owed $827,983.52 plus interest. Early in 2019, the district court consolidated the Borst–Kelly case and the FAC case.

**D. Summary Judgment and Trial in the Consolidated Proceedings.** On November 22, FAC moved for summary judgment in the consolidated case. FAC once again argued that the mechanics' lien holders had failed to post notices of commencement within ten days of beginning work, rendering their liens invalid. In the alternative, FAC maintained that all mechanics' liens were junior and inferior to its mortgages because the subcontractors' notices of commencement had not been posted until after FAC had recorded its mortgages. Kelly and Borst resisted. The district court denied FAC's summary judgment motion, and the case proceeded to a bench trial on all issues, including FAC's effort to enforce Randy Dostal's personal guaranties.

At trial, FAC's vice president of credit and implementation and underwriting, Mark Thomas, testified. Through Thomas, FAC offered into evidence letters addressed to Dostal Developers that detailed the current payoff amounts for all five loans. FAC's loan sub-servicer, BSI, had created these payoff

statements per FAC's request. Thomas testified that BSI regularly provided such payoff statements whenever the borrower or the lender requested them. The Dostal defendants objected to the admission of the payoff statements on the ground that they were hearsay "clearly prepared for litigation purposes, not in the regular course of business." The district court overruled the objection and allowed the payoff statements to come into evidence.

Following trial, the district court entered a ruling that FAC, Borst, and Kelly were all entitled to foreclose on their respective mortgages and liens against Dostal Developers, with the exception of Kelly's mechanics' lien for Lot 10 because Kelly had failed to post a notice of commencement for that lot. The court found that Borst's and Kelly's mechanics' liens on the residential properties were valid because the preliminary notices met the requirements for subcontractors as set forth in Iowa Code section 572.13B. The court also rejected Dostal Developers' argument that FAC had failed to meet a contractual requirement that it give notice before accelerating the balances due under the loans.

Yet the district court found that Randy Dostal, despite having signed personal guaranties, was not personally liable for amounts due on the FAC loans. The court reasoned that there was "no evidence in the record to suggest that Randy Dostal took any actions herein as an individual. Rather, all actions taken by Randy Dostal, the Court finds, were done in his capacity on behalf of Dostal Developers."

Turning to the question of priority, the district court determined that the mechanics' liens of Kelly and Borst had priority over FAC's mortgages because

Iowa Code section 572.18 gives a timely posted mechanics' lien priority over "all other liens" that are perfected subsequent to the beginning of the contractor's work. In the district court's view, Kelly and Borst posted their mechanics' liens on time—i.e., within ninety days of finishing their work on the properties. Therefore, their liens were superior to FAC's mortgages that were recorded after Kelly and Borst began their work. *See* Iowa Code § 572.18. As between Borst and Kelly, Kelly had first priority because Kelly had posted its liens first. The district court also awarded attorney fees to FAC, Borst, and Kelly as prevailing parties. *See id.* § 572.32(1).

**E. The Decision of the Court of Appeals.** FAC appealed, and the Dostal defendants cross-appealed. FAC raised three issues on appeal, contending: (1) the mechanics' liens of Borst and Kelly were invalid and if not, their liens were inferior to FAC's mortgages; (2) Randy Dostal signed the guaranties in his personal capacity and was personally liable; and (3) Borst and Kelly should not have prevailed and were not entitled to attorney fees. The Dostal defendants cross-appealed and raised three more issues: (1) the payoff statements used to show the deficiency amounts were inadmissible hearsay and should not have been received in evidence; (2) FAC should not have been allowed to foreclose because it did not provide contractually prescribed notices of default and acceleration; and (3) FAC should not have been awarded the full amount of attorney fees it requested. We transferred the case to the court of appeals.

The court of appeals reversed the district court on the issue of Randy Dostal's personal liability. The court explained,

Randy Dostal served as "Guarantor" on the loans made by FAC to Dostal Developers. "Thomas Dostal Developers Inc." was defined as the "Borrower." . . . Dostal signed four of the five agreements individually, and the fifth listed him as guarantor and was signed individually by [him as] Thomas [T.] Dostal. These signatures stand in stark contrast to the mortgage agreements, which Randy Dostal signed as president of Thomas Dostal Developers. The language and the signatures unambiguously establish Randy Dostal's intent to serve as personal guarantor of the loans extended to Dostal Developers.

On all other issues, the court of appeals affirmed the district court. The court "[a]ssum[ed] without deciding" that the payoff statements did not fall within the hearsay exception. Yet it rejected the Dostal parties' appeal on this point because it found that Thomas had "testified without objection to the figures contained in the documents before the documents were offered or admitted." It found that the five notes could be accelerated by FAC without notice, and in any event, FAC had provided notice.

The court also determined that the mechanics' liens of Borst and Kelly were valid based on a "plain reading" of the statute. It reasoned that the statute doesn't expressly require subcontractors to post notices of commencement within ten days as it does general contractors, and such a rule would be impractical:

> Section 572.13A(1) requires the general contractor/owner-builder—not the subcontractor—to post a notice of commencement of work within ten days of the commencement of work. Section 572.13A(2) allows a subcontractor to make the posting *if* the general contractor/owner-builder does not. . . .
>
> In terms of a subcontractor's timing of notices, the subcontractor might not know whether the general contractor/owner-builder satisfied its obligation to post the notice of commencement of work until after the ten-day period set forth in section 572A.13A(1) expires. The subcontractor's first opportunity

to post its notice of commencement would be on the eleventh day after commencement of work.

Further, based on Iowa Code section 572.18(1), the court of appeals found the Borst and Kelly liens had priority over FAC's mortgages.

FAC and the Dostal parties sought further review of this decision, which we granted. "On further review, we have the discretion to review all or some of the issues raised on appeal or in the application for further review." *Wermerskirchen v. Canadian Nat'l R.R.*, 955 N.W.2d 822, 827 (Iowa 2021) (quoting *State v. Roby*, 951 N.W.2d 459, 463 (Iowa 2020)). Here, we choose to review only two issues: (1) the validity and priority of the subcontractors' mechanics' liens, as to which FAC seeks further review; and (2) the evidentiary ruling that admitted loan payoff statements as business records, as to which the Dostal parties seek further review. The court of appeals decision shall stand as the final decision on all other issues.

**III. Standard of Review.**

An action to enforce a mechanics' lien is an action in equity. Iowa Code § 572.26(1). Equitable proceedings are reviewed de novo. *Mlady v. Dougan*, 967 N.W.2d 328, 332 (Iowa 2021); *see also* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). But "[w]e review questions of statutory interpretation for correction of errors at law." *Mlady*, 967 N.W.2d at 332 (quoting *Standard Water Control Sys., Inc. v. Jones*, 938 N.W.2d 651, 656 (Iowa 2020)).

We review evidentiary rulings on hearsay for errors at law. *Buboltz v. Birusingh*, 962 N.W.2d 747, 757 (Iowa 2021).

**IV. Analysis.**

**A. Validity of the Borst and Kelly Mechanics' Liens.** FAC first contends that Borst and Kelly don't have valid liens because notices were not timely posted on the MNLR website as required by Iowa Code sections 572.13A and 572.13B.

1. *Iowa Code section 572.13A.* The first of these two provisions, section 572.13A, is titled "Notice of commencement of work — general contractor — owner-builder." *Id.* § 572.13A. Section 572.13A, subsection 1 requires a general contractor or an owner-builder (such as Dostal Developers) who has contracted or will contract with a subcontractor to post a notice to the MNLR website no later than ten days after work begins and makes the notice effective only for work completed after this posting. Specifically, this subsection states,

> Either a general contractor, or an owner-builder who has contracted or will contract with a subcontractor to provide labor or furnish material for the property, shall post a notice of commencement of work to the mechanics' notice and lien registry internet site no later than ten days after the commencement of work on the property. A notice of commencement of work is effective only as to any labor, service, equipment, or material furnished to the property subsequent to the posting of the notice of commencement of work.

*Id.* § 572.13A(1). Next, this subsection identifies the information required to be included in the posting. *Id.* § 572.13A(1)(*a*)–(*g*). However, a notice of commencement of work does not contain information about particular subcontractors. *See id.* It only indicates that a general contractor or owner-builder either has hired a subcontractor or intends to hire one in the future. *See id.*

In the following subsection—section 572.13A, subsection 2—the statute expressly allows a subcontractor to post a notice of commencement in the event that the general contractor fails to do so:

> If a general contractor or owner-builder fails to post the required notice of commencement of work to the mechanics' notice and lien registry internet site pursuant to subsection 1, within ten days of commencement of the work on the property, a subcontractor may post the notice in conjunction with the posting of the required preliminary notice pursuant to section 572.13B. A notice of commencement of work must be posted to the mechanics' notice and lien registry internet site before preliminary notices pursuant to section 572.13B may be posted.

*Id.* § 572.13A(2).

Whoever posts a notice of commencement of work—whether a contractor, an owner-builder, or a subcontractor—is required to provide written notice to the owner of the property (if the owner is not an owner-builder). *Id.* § 572.13A(3). Again, this notice provides no information about particular subcontractors. *See id.* Its purpose, seemingly, is to provide *general* notice that there are (or will be) subcontractors with potential lien rights working on the property. *See id.*

The notice of commencement of work also results in the MNLR administrator (i.e., the secretary of state) assigning an MNLR number to the project. *Id.* § 572.13A(3)(*a*); *see also id.* § 572.1(1) (" 'Administrator' means the secretary of state.").

Finally, section 572.13A, subsection 4 states, "A general contractor who fails to provide notice pursuant to this section is not entitled to a lien and remedy provided by this chapter." *Id.* § 572.13A(4). But only a general contractor's

noncompliance with this section forfeits the right to a lien—there is no mention of subcontractors here. *See id.*

2. *Iowa Code section 572.13B.* The next Code section, 572.13B, sets forth the notice requirements for subcontractors like Borst and Kelly. It is titled "Preliminary notice—subcontractor—residential construction." *Id.* § 572.13B. It states as follows:

> 1. A subcontractor shall post a preliminary notice to the mechanics' notice and lien registry internet site. A preliminary notice posted before the balance due is paid to the general contractor or the owner-builder is effective as to all labor, service, equipment, and material furnished to the property by the subcontractor. The preliminary notice shall contain all of the following information:
>
> . . . .
>
> *b.* The mechanics' notice and lien registry number.
>
> *c.* The name, address, and telephone number of the subcontractor furnishing the labor, service, equipment, or material.
>
> . . . .
>
> 2. At the time a preliminary notice is posted to the mechanics' notice and lien registry internet site, the administrator shall send notification to the owner, including the owner notice described in section 572.13, subsection 1, and shall post the mailing of the notice on the mechanics' notice and lien registry internet site as prescribed by the administrator pursuant to rule. Notices under this section shall not be sent to owner-builders. Upon request, the administrator shall provide proof of service at no cost for the notice required under this section.
>
> 3. *a.* A mechanic's lien perfected under this chapter is enforceable only to the extent of the balance due the general contractor or the owner-builder at the time of the posting of the preliminary notice specified in subsection 1, and, except for residential construction property owned by an owner-builder, also is enforceable only to the extent of the balance due the general contractor at the time the owner actually receives the notice provided pursuant to subsection 2 or paragraph "*b*".

*Id.* § 572.13B(1)–(3).

Some differences between section 572.13B and the preceding section are noteworthy. First, unlike a notice of commencement of work, a preliminary notice can sweep backward: "A preliminary notice posted before the balance due is paid to the general contractor or the owner-builder is effective as to all labor, service, equipment, and material furnished to the property by the subcontractor." *Id.* § 572.13B(1). Second, the preliminary notice requires different content. It must include the MNLR number for the project that the administrator assigned when the notice of commencement of work was filed. *Id.* § 572.13B(1)(*b*). And it must include information about the subcontractor. *Id.* § 572.13B(1)(*c*). Third, a subcontractor's mechanics' lien is only enforceable "to the extent of the balance due the general contractor or the owner-builder" at the time the preliminary notice was posted. *Id.* § 572.13B(3)(*a*). So to that extent, the preliminary notice doesn't sweep backward.

If the requirements of Iowa Code section 572.13B are not followed, that subcontractor is not entitled to a lien. *Id.* § 572.13B(4) ("A subcontractor who fails to post a preliminary notice pursuant to this section shall not be entitled to a lien and remedy provided under this chapter.").

Both section 572.13A and section 572.13B apply only to "residential construction properties." *Id.* §§ 572.13A(5), .13B(5).

3. *Interpretation of these provisions.* Having summarized Iowa Code sections 572.13A and 572.13B, we now turn to their interpretation and application in this case. "Our first task in interpreting a statute is to determine

whether the relevant language is ambiguous. 'If the statutory language is plain and the meaning clear, we do not search for legislative intent beyond the express terms of the statute.' " *United Elec., Radio & Mach. Workers of Am. v. Iowa Pub. Emp't Rels. Bd.*, 928 N.W.2d 101, 109 (Iowa 2019) (citation omitted) (quoting *State v. Pub. Emp. Rels. Bd.*, 744 N.W.2d 357, 360–61 (Iowa 2008)).

We begin with the statute's text. *Calcaterra v. Iowa Bd. of Med.*, 965 N.W.2d 899, 904 (Iowa 2021) ("When interpreting the meaning of a statute, we start with the statute's text."). FAC's primary textual argument asserts that section 572.13A(2)—which allows subcontractors to post a notice of commencement—expressly sets a ten-day time limit for doing so. FAC points to the following language:

> If a general contractor or owner-builder fails to post the required notice of commencement of work . . . pursuant to subsection 1, *within ten days of commencement of the work on the property*, a subcontractor may post the notice in conjunction with the posting of the required preliminary notice pursuant to section 572.13B.

*Id.* § 572.13A(2) (emphasis added). FAC insists that the italicized clause qualifies the clause that follows, thus placing a time limit on *subcontractors*' ability to post a notice of commencement. Borst and Kelly disagree and argue that the italicized clause qualifies the preceding "if" clause, and therefore clarifies the amount of time *general contractors or owner-builders* have to post before a subcontractor is allowed to do so.

Perhaps there is some ambiguity here. Given that the clause in question is set off by commas on both sides, it is not grammatically clear whether FAC or the subcontractors get the better of a debate based on punctuation alone. But a

broader look at sections 572.13A and 572.13B as a whole provides clarity. *See Calcaterra*, 965 N.W.2d at 904 ("Statutes need to be read as a whole . . . ." (quoting *Porter v. Harden*, 891 N.W.2d 420, 425 (Iowa 2017))); *see also* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context . . . ."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("Context is a primary determinant of meaning. A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts."). Considering the statute as a whole, we are convinced that the ten-day time limit in section 572.13A applies only to general contractors and owner-builders, not subcontractors.

First, timing. As Borst and Kelly point out, it would seemingly be impossible for a subcontractor to comply with the same ten-day deadline governing contractors and owner-builders that runs from the commencement of the overall work. How would a subcontractor know whether a contractor or owner-builder had failed to meet the ten-day deadline until that ten-day deadline had passed? And different subcontractors arrive on the jobsite at different times. What if the subcontractor in question didn't show up (or wasn't even hired) until more than ten days after the overall work commenced? Under FAC's interpretation, the ten days a subcontractor has in which to post a notice of commencement of work must necessarily expire before the condition precedent for posting it is even satisfied. This result would be absurd, and absurd results should be avoided. *See Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867

N.W.2d 58, 75 (Iowa 2015) ("We have long recognized that statutes should not be interpreted in a manner that leads to absurd results."); *see also* Iowa Code § 4.4(3) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended.").

Also, section 572.13A contemplates *one* notice of commencement of work per project. *See* Iowa Code §§ 572.13A(2) (referring to "the required notice of commencement of work", .13A(3)(*a*) (stating that after the notice is posted, the administrator of the registry "shall assign" a registry number for the improved property). The notice of commencement of work triggers the assignment of a unique MNLR number for that project that subcontractors later must reference when they file any preliminary notices. *Id.* §§ 572.13A(3)(*a*), .13B(1)(*b*).

It would seem odd to allow the fate of all subcontractors to rise or fall based on whether one early-arriving subcontractor undertook the chivalrous act of posting a notice within ten days of commencement of the overall work for the benefit of all subcontractors. Borst and Kelly's interpretation, by contrast, allows a subcontractor that is personally concerned about getting paid and plans to post a preliminary notice to protect themselves by posting any missing notice of commencement of work "in conjunction with the posting of the required preliminary notice." *Id.* § 572.13A(2).

In fact, section 572.13A anticipates that the notice of commencement might have to be filed before any subcontractor has even been hired. The notice of commencement posting requirement applies to "a general contractor, or an owner-builder who has contracted *or will contract* with a subcontractor." *Id.*

§ 572.13A(1) (emphasis added). That being the case, how can subcontractors be held to the contractor/owner-builder's ten-day deadline?

Further, with respect to a subcontractor, the statute says that the subcontractor "may" post the missing notice that the owner-builder/contractor has failed to post to the MNLR. *Id.* § 572.13A(2). It doesn't say that the subcontractor "must." The "must" language applicable to subcontractors surfaces in the following sentence, which provides "[a] notice of commencement of work must be posted to the mechanics' notice and lien registry internet site [note the passive voice] before preliminary notices pursuant to section 572.13B may be posted." *Id.* Logically, therefore, a subcontractor has an option to supply a missing notice of commencement of work; the only requirement is that somebody do so before preliminary notices may be posted.[4]

FAC points out that House File 675, the bill that established these posting requirements, had an attached bill explanation indicating that mechanics' liens are only effective for the work accomplished after a notice of commencement has been posted. H.F. 675, 84th G.A., 2d Sess., explanation (Iowa 2012). The

---

[4]It is also worth noting that the secretary of state has interpreted Iowa Code section 572.13A(2) in the same way that we do. Its rule provides,

> Prior to the posting of a preliminary notice, a notice of commencement of work must be posted on the MNLR. If the general contractor or owner-builder has not posted a notice of commencement of work on the MNLR within ten days of commencement of work on the property, then the subcontractor may post a notice of commencement of work on the MNLR prior to posting the preliminary notice.

Iowa Admin. Code r. 721—45.5(1)(*b*).

We are not deciding today whether the secretary of state has been clearly vested with interpretive authority over section 572.13A(2). Iowa Code section 572.34(1) provides that the secretary "shall adopt rules pursuant to chapter 17A for the creation and administration of the registry." We simply note that the party charged with administering the MNLR—the secretary of state—concurs in our interpretation of the underlying statute.

explanation stated, "A preliminary notice posted before the balance due is paid to the general contractor or owner-builder by the owner is effective as to all labor, service, equipment, or material furnished to the property *subsequent to the posting of the notice of commencement of work.*" *Id.* (emphasis added).

While we do "give weight to explanations attached to bills as indications of legislative intent" when a statute is ambiguous, ultimately, "[t]he legislature enacts the bill—not the accompanying explanation." *Iowa Ins. Inst.*, 867 N.W.2d at 76 (quoting *Star Equip., Ltd. v. State*, 843 N.W.2d 446, 454 & n.3 (Iowa 2014)). In this instance, the bill explanation cited by FAC is at odds with the actual text of section 572.13B(1), which provides, "A preliminary notice posted before the balance due is paid to the general contractor or the owner-builder is effective as to *all* labor, service, equipment, and material furnished to the property"—without qualification. Iowa Code § 572.13B(1) (emphasis added).

The bill explanation appears to have mistakenly blended section 572.13A(1) with section 572.13B(1). The former states, "A notice of commencement of work is effective only as to any labor, service, equipment, or material furnished to the property subsequent to the posting of the notice of commencement of work." *Id.* § 572.13A(1). But section 572.13A, as we have discussed, deals with owner-builders and contractors and the validity of contractor liens. It is titled "Notice of commencement of work — general contractor — owner-builder." *Id.* § 572.13A; *see State v. Hall*, 969 N.W.2d 299, 307 (Iowa 2022) ("Although the title of a statute cannot change the plain meaning of the statutory text, it can be considered in interpreting the text."). By contrast,

section 572.13B is titled "Preliminary notice — subcontractor — residential notice." Iowa Code § 572.13B. It is only logical to conclude that "effective," as used in section 572.13A(1), refers to the effectiveness of a contractor lien; while "effective," as used in section 572.13B(1), refers to the effectiveness of a subcontractor lien. Otherwise, the two provisions would be in conflict. *See State v. Iowa Dist. Ct. for Warren Cnty.*, 828 N.W.2d 607, 614 (Iowa 2013) ("We try to read statutes to avoid conflicts . . . .").

FAC also claims that Borst and Kelly's interpretation is unfair to construction lenders and will allow "third parties [to] be surprised by mechanics' liens arising months or years after a subcontractor commences work." We think this concern is overstated.

Lenders are no worse off than they were before House File 675 was enacted in 2012. In fact, they are better off. Previous law allowed all subcontractors to perfect mechanics' liens on residential projects within ninety days after the completion of their work without needing to worry about a notice of commencement of work having been posted. *See* Iowa Code §§ 572.8–.9 (2011).

Also, under current law, as under prior law, a construction lender that (unlike FAC) recorded its mortgage before a particular subcontractor began its work gets priority over that subcontractor's mechanics' lien. *See id.* § 572.18(2) (2018). This can apply even to advances that the lender makes after the mortgage is recorded. *See Blue Grass Sav. Bank v. Cmty. Bank & Tr. Co.,* 941 N.W.2d 20, 23–29 (Iowa 2020) (recognizing that a mortgage's priority can extend to funds advanced after the recording of the mortgage). Additionally, with respect to

residential construction, a mechanics' lien is enforceable only to the extent of the balance due the contractor or the owner-builder when the preliminary notice is filed. Iowa Code § 572.13B(3)(*a*). A prudent lender can use self-protection methods such as requiring its borrower to bond the project, joint check or escrow arrangements, or requirements that subcontractors waive or subordinate their lien rights. Finally, it's worth noting that subcontractors who work on property presumably enhance the value of that property, and thus enhance the value of the lender's collateral—even when the lender stands in a second position behind them.

The point of Iowa Code section 572.13A is to incentivize contractors and owner-builders to promptly post the notice of commencement of work and thereby activate the MNLR for the jobs they manage, not to penalize subcontractors that were not in a position to post that notice of commencement until sometime later.

For all these reasons, we conclude that Borst and Kelly have valid mechanics' liens even though no notices of commencement were posted as to any of the five properties until February 2018, months after work on those properties actually commenced. The ten-day deadline in both subsections 1 and 2 of section 572.13A applies to contractors/owner-builders, not to subcontractors. Also, Borst's and Kelly's mechanics' liens cover all work they performed, subject to the limits in section 572.13B(3)(*a*), not merely the work performed after the notice of commencement was posted. *See id.* § 572.13B(1).

**B. Priority of the Borst and Kelly Mechanics' Liens.** Chapter 572 allows mechanics' liens to obtain priority over other types of liens if certain conditions are met. Section 572.18 describes these conditions as follows:

> 1. Mechanics' liens posted by a general contractor or subcontractor within ninety days after the date on which the last of the material was furnished or the last of the claimant's labor was performed and for which notices were properly posted to the mechanics' notice and lien registry internet site pursuant to sections 572.13A and 572.13B shall be superior to all other liens which may attach to or upon a building or improvement and to the land upon which it is situated, except liens of record prior to the time of the original commencement of the claimant's work or the claimant's improvements, except as provided in subsection 2.
>
> 2. Construction mortgage liens shall be preferred to all mechanics' liens of claimants who commenced their particular work or improvement subsequent to the date of the recording of the construction mortgage lien.

Iowa Code § 572.18; *see, e.g.*, *Midland Sav. Bank FSB v. Stewart Grp., LC*, 533 N.W.2d 191, 193 (Iowa 1995) (explaining that mechanics' liens are preferred over all other liens except for a construction mortgage recorded before the subcontractor commenced their work).

The first condition that Kelly and Borst had to satisfy to attain priority over other types of liens was to post their mechanics' liens "within ninety days after the date on which the last of the material was furnished or the last of the claimant's labor was performed." Iowa Code § 572.18(1). Both subcontractors did so. Borst's work ended on December 19, 2017, and Borst posted its lien on February 2, 2018, forty-six days later. Kelly's final day working on the property was January 15, 2018, and Kelly posted its liens on February 1, eighteen days later.

Next, Borst's and Kelly's notices of commencement and preliminary notices had to be "properly posted" to the MNLR website. *Id.* We have already determined that this occurred.

Finally, the subcontractors had to commence their work on the properties before FAC recorded its mortgages in order to get priority over FAC. *See id.* §§ 572.18(1)–(2). Borst started work on July 3, 2017. Kelly started sometime in September 2017. FAC's earliest mortgages were not recorded until November 13, 2017, well after the subcontractors had begun their work. That being so, Borst's and Kelly's mechanics' liens have priority over FAC's inferior mortgages.[5]

**C. Response to the Dissent.** The dissent argues that the phrase "commencement of the work" as used in the second sentence of Iowa Code section 572.13A(2), refers to *commencement of that subcontractor's work*. This argument avoids some of the possible absurdities discussed in part IV.A above. No longer would the subcontractor potentially be required to file the notice of commencement of work before arriving at the project or even being hired. But it creates other problems.

For one thing, when the same term is used repeatedly in the same statute, we normally give it the same meaning each time. *See, e.g., State v. Paye*, 865 N.W.2d 1, 7 (Iowa 2015); *State v. Sewell*, 960 N.W.2d 640, 643 (Iowa 2021). It would be very odd for every other use of "commencement of work" or

---

[5]Mechanics' liens have long been given this preference in Iowa. *See, e.g., Nw. Nat'l Bank of Sioux City v. Metro Ctr., Inc.*, 303 N.W.2d 395, 398 (Iowa 1981) (applying the 1979 version of Iowa Code section 572.18 and stating that "the mechanic's lien arises upon furnishing of labor or material; not upon its filing").

"commencement of the work" to be referring to the commencement of the work *as a whole*, and this use alone to be referring to only that subcontractor's work. Let us quote again Iowa Code section 572.13A(2):

> If a general contractor or owner-builder fails to post the required notice of *commencement of work* to the mechanics' notice and lien registry internet site pursuant to subsection 1, within ten days of *commencement of the work* on the property, a subcontractor may post the notice in conjunction with the posting of the required preliminary notice pursuant to section 572.13B. A notice of *commencement of work* must be posted to the mechanics' notice and lien registry internet site before preliminary notices pursuant to section 572.13B may be posted.

(Emphasis added.) Under the dissent's interpretation, "commencement of work" as used in the first and second sentences refers to something totally different from "commencement of the work" as used in the first sentence. That is implausible.

Note also the use of the definite article, i.e., "the work," rather than a possessive, i.e., "its work." *Id.* If anything, that helps clarify that the statute is referring to *the overall work* on the property, rather than a specific entity's work. In section 572.18, subsection 1, when the legislature wanted to refer to the subcontractor's commencement of their own work, it used the qualifying phrase "the claimant's work or the claimant's improvements." *Id.* § 572.18(1). In subsection 2, when the legislature again wanted to refer to a subcontractor's commencement of their own work, it used the qualifying phrase "their particular work or improvement." *Id.* § 572.18(2). No qualification here.

Furthermore, under the dissent's interpretation, any notice of commencement of work has to be filed by the subcontractor within ten days of

the subcontractor's commencement of their work. But it also has to be filed "in conjunction with the posting of the required preliminary notice." *Id.* § 572.13A(2). So subcontractors would have to regularly check the MNLR before furnishing anything to a residential jobsite, no matter how minor. If no notice of commencement of work appeared in the search, the subcontractor would need to file both a notice of commencement of work *and* a preliminary notice immediately. Subsequent subcontractors would not be so time-limited in their filing of the preliminary notice since they would not be subject to the "in conjunction with" requirement. That seems inequitable.

Moreover, the dissent's interpretation fails to harmonize and give effect to *both* Iowa Code section 572.13A(1) *and* section 572.13B(1). The former states, "A notice of commencement of work is effective only as to any labor, service, equipment, or material furnished to the property subsequent to the posting of the notice of commencement of work." *Id.* § 572.13A(1). The latter states, "A preliminary notice posted before the balance due is paid to the general contractor or the owner-builder is effective as to all labor, service, equipment, and material furnished to the property by the subcontractor." *Id.* § 572.13B(1). As we have already discussed, the logical way to reconcile the two provisions is to conclude that the former provision applies to contractors (since the preceding sentence talks about the contractor or owner-builder's duty to post the notice of

commencement of work), whereas the latter provision applies to subcontractors. The dissent gives no effect to the latter provision.[6]

Additionally, the dissent's interpretation still leaves some of the absurdity in place. What if the overall work and the subcontractor's work begin at the same time, as can often happen? Once again, the subcontractor won't know if the contractor/owner-builder failed to do what it was supposed to do until the ten days have passed, at which point it would be too late for the subcontractor to file.

Finally, it's notable that the Iowa Practice treatise rejects the dissent's reading of section 572.13A(2) and agrees with ours. According to that treatise:

> If a general contractor or owner-builder fails to post the required notice of commencement of work to the mechanics' notice and lien registry internet Web site pursuant to I.C.A. § 572.13B(1) within 10 days of commencement of the work on the property, a subcontractor may post the notice in conjunction with the posting of the required preliminary notice. A notice of commencement of

---

[6]The dissent worries about disparate treatment between contractors and subcontractors if the scope-of-the-lien provision in Iowa Code section 572.13A(1) applies only to contractors and not subcontractors. Again, the dissent overlooks the fact that the preceding sentence applies only to contractors and also overlooks the fact that its interpretation gives no effect to the scope-of-the-lien provision in section 572.13B(1).

In any event, there is no disparate treatment. It is the responsibility of *the contractor* to post the notice of commencement of work. *See id.* § 572.13A(1) ("[A] general contractor . . . shall post a notice of commencement of work . . . ."). This notice doesn't identify any particular subcontractors but gives notice that there are or will be subcontractors on the job. This notice contains information that should be readily available to the *contractor*—i.e., the name and address of the owner and the date of commencement of the overall work—but that may not be readily available to a subcontractor. *See id.* § 572.13A(1)(*a*), (*e*). Thus, it is fair for the *contractor* to have its lien potentially impacted if it doesn't do what it is supposed to do.

By contrast, a subcontractor "may post" the notice of commencement of work if the contractor fails to do so. *See id.* § 572.13A(2). The subcontractor's lien also may be affected by a delay in the posting of the notice of commencement of work, but the effect is only indirect because the subcontractor can't post a preliminary notice until there is a notice of commencement of work on file. *See id.* § 572.13B(3)(*a*) (stating that the subcontractor's lien is enforceable only to the extent of the balance due the contractor "at the time of the posting of the preliminary notice"). It is fair and reasonable for the effect on the subcontractor's rights to be secondary because the subcontractor's responsibility is secondary.

> work must be posted to the mechanics' notice and lien registry internet website before preliminary notices pursuant to I.C.A. § 572.13B may be posted.

10 Barry A. Lindahl, *Iowa Practice Series: Civil Practice Forms* § 61:3, at 717 (2022 ed. 2022); *see also id.* § 61:3, at 718 ("A general contractor who fails to provide the required notice is not entitled to a lien and remedy provided by this chapter."). The citation to section 572.13B(1) is a technical error; it should be section 572.13A(1). But substantively, the treatise agrees with our view that the second comma is the one that does the work. The treatise also agrees that the "effective" language in that section applies to the general contractor. *Id.* § 61:3, at 717.

We respectfully decline to adopt the dissent's views.

**D. Admissibility of FAC's Loan Payoff Statements.** We now address the evidentiary issue raised by the cross-appeal. Dostal Developers and Randy Dostal contend that the loan payoff statements created by FAC's sub-servicer and offered into evidence through an FAC employee were inadmissible hearsay. The district court, however, admitted the payoff statements under the business records exception. When the court of appeals considered this issue on appeal, it determined that any error in admitting the records would have been harmless because FAC's Mark Thomas "testified without objection to the figures contained in the documents before the documents were offered or admitted."

We question whether Thomas actually testified to the figures contained in the documents "without objection." This was a trial to the court. In the course of attempting to lay foundation for the admission of each of the five payoff

statements, FAC's attorney asked Thomas to describe the contents of each such statement, including unpaid principal and interest. This occurred without objection. But when FAC tried to offer the statements themselves into evidence, the Dostal parties objected. Although the better practice would have been to object to testimony about the contents of exhibits that were not yet in evidence, we are not prepared to accept the court of appeals' characterization of the situation as a waiver, at least with a bench trial. So, we turn to the merits.

FAC argues the payoff statements were properly admitted anyway under Iowa Rule of Evidence 5.803(6) as business records. In the proceedings below, the Dostal parties objected on the ground the statements were prepared for litigation purposes rather than in the ordinary course of business.

We disagree. The record shows that FAC's loan sub-servicer, BSI, routinely furnished these types of payoff statements per FAC's request. Thomas explained, "It's the standard practice for how we order payoffs when we, the lender, want to know what is outstanding on the loans." He confirmed it was "the regular practice of FAC to get payoff statements to show the balance of a loan at any given time." So while these particular statements may have been *requested* for litigation purposes, from the standpoint of the party that *prepared* them (BSI) they were ordinary business records. *See, e.g., U.S. Bank Tr., N.A. v. Jones*, 925 F.3d 534, 537–38 (1st Cir. 2019) (Souter, J.) (upholding the admission under the business records exception of a computer printout that contained an account summary and a list of transactions related to the loan); *Deutsche Bank Nat'l Tr. Co. v. de Brito*, 235 So. 3d 972, 975–76 (Fla. Dist. Ct. App. 2017) (finding that a

payoff printout from a third-party vendor should have been admitted into evidence under the business records exception); *Beal Bank, SSB v. Eurich*, 831 N.E.2d 909, 913 (Mass. 2005) ("Clearly, EPS, as the bank's servicing agent, had a business duty accurately to maintain such records for the bank. Given EPS's obligation to maintain these records, and the bank's reliance on such records, the judge was warranted in finding that the two computer printouts were made in good faith and in the regular course of business.").

**V. Conclusion.**

For the foregoing reasons, we affirm the decision of the court of appeals. We reverse the district court on the issue of Randy Dostal's personal liability but affirm it in all other respects. The case is remanded for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART ON APPEAL, AFFIRMED ON CROSS-APPEAL.**

Christensen, C.J., and Appel and Waterman, JJ., join this opinion. McDermott, J., files a dissenting opinion, in which McDonald and Oxley, JJ., join.

#20–0972, *Borst Bros. Constr., Inc. v. Thomas Dostal Devs., Inc.*

**McDERMOTT, Justice (dissenting).**

I respectfully dissent from the majority's holding that the mechanics' liens have priority over the bank's construction mortgages in this case. I disagree with the majority's interpretation of the mechanic's lien recording statutes found in Iowa Code sections 572.13A and 572.13B (2018), and would hold that the required notices in this case weren't properly posted and thus the subcontractors' mechanics' liens are subordinate to the bank's construction mortgages.

As the majority correctly recites, section 572.13A, subsection 1 requires a general contractor or owner-builder who has contracted with a subcontractor to post a "notice of commencement of work" to the mechanic's notice and lien registry website "no later than ten days after the commencement of work on the property." *Id.* § 572.13A(1). The statute continues: "A notice of commencement of work is effective only as to any labor, service, equipment, or material furnished to the property subsequent to the posting of the notice of commencement of work." *Id.*

Dostal Developers, the owner-builder, failed to post a notice of commencement. Section 572.13A, subsection 2 spells out the requirements for subcontractors to file mechanics' liens when the general contractor or owner-builder doesn't file a notice of commencement:

> If a general contractor or owner-builder fails to post the required notice of commencement of work to the mechanics' notice and lien registry internet site pursuant to subsection 1, within ten days of commencement of the work on the property, a subcontractor may

> post the notice in conjunction with the posting of the required preliminary notice pursuant to section 572.13B.

*Id.* § 572.13A(2).

Both the majority and I read the sentence as an "if-then" statement (also known as a "conditional" sentence); we just disagree on where the unwritten, implied "then" goes. I believe the sentence must be read as follows: "*If* a general contractor or owner-builder fails to post the required notice of commencement . . . pursuant to subsection 1, [*then*] within ten days of commencement of the work on the property, a subcontractor may post the notice in conjunction with the posting of the required preliminary notice." *Id.* (emphasis added). The majority's reading places the implied "then" later: "*If* a general contractor or owner-builder fails to post the required notice of commencement . . . pursuant to subsection 1, within ten days of commencement of the work on the property, [*then*] a subcontractor may post the notice in conjunction with the posting of the required preliminary notice." *Id.* (emphasis added).

The phrase "within ten days of commencement of the work on the property" is set off by commas on both sides. *Id.* The majority's reading more or less ignores the comma between "subsection 1" and "within ten days." Such a reading thus treats the phrase set off by commas as simply providing more information about the requirements of subsection 1. But that's already achieved by the sentence's explicit reference to it: "pursuant to subsection 1." *Id.* Subsection 1, as we know, requires the posting within ten days of commencement. *Id.* § 572.13A(1). The legislature had no need to repeat the particular detail that subsection 1 included a ten-day deadline.

Conversely, if we read the sentence in a way that gives effect to the comma, the phrase "within ten days of commencement of the work on the property" does some work in the sentence: it imposes a deadline on the subcontractor to post the notice of commencement if the general contractor or owner-builder didn't already. The majority's reading suggests that there's no deadline; the subcontractor could post the notice of commencement months, or potentially years, after starting its work on the project without consequence. By reading the phrase "within ten days of commencement of the work on the property" as establishing a deadline tied to the subcontractor's actual start of work on the project, the "notice of commencement" actually gives meaning to the word *commencement.*

The majority also reads "the work" in section 572.13A, subsection 2 to refer only to the general contractor's or owner-builder's work, not the subcontractor's *own* work. On this, too, I disagree with the majority. The word "work" is used over twenty-five times in chapter 572. *See generally id.* ch. 572. It's not defined anywhere in the statute, but by context we see that it refers generally to furnishing labor or materials that improve the property, without regard to any particular person. For instance, Iowa Code section 572.2 sets forth the "persons entitled to lien" and refers to "work" by owners, owner-builders, general contractors, and subcontractors:

> Every person who furnishes any material or labor for, or performs any labor upon, any building or land for improvement, alteration, or repair thereof, including those engaged in the construction or repair of any *work* of internal or external improvement . . . by virtue of any

contract with the owner, owner-builder, general contractor, or *subcontractor* shall have a lien upon such building or improvement.

*Id.* § 572.2(1) (emphasis added). The term "the work" in section 572.13A, subsection 2 can be, and makes most sense in context, applied with reference to the *subcontractor*'s work on the project. *Id.* § 572.13A(2). Such a reading also resolves the potential problem that the majority raises about a subcontractor needing to file the notice of commencement within ten days of the general contractor's or owner-builder's work on the project, which a subcontractor (particularly one hired for the project long after other work has started) might have no information about.

A notice of commencement of work posted to the mechanic's notice and lien registry website puts the world on notice that at least one subcontractor has performed (or is about to perform) work on the project that will trigger potential lien rights against the property. I disagree with the majority's suggestion that "[a] prudent lender can use self-protection methods" (including, for example, "requiring the borrower to bond the project") to guard against the prospect of unrevealed mechanic's lien claimants. If the statutory requirements are followed, a lender advancing funds on a project should be able to check the mechanic's notice and lien registry website to determine whether a notice has been filed and thus whether a mechanic's lien claimant might exist. A "notice and lien registry" that provides no notice of any potential lien isn't much of a "notice and lien registry." The majority's interpretation torpedoes an obvious benefit of the statute.

Perhaps more importantly, as section 572.13A, subsection 1 states, a notice of commencement of work is only effective for labor or material furnished *after* the notice of commencement of work is posted. The majority points out that this particular sentence isn't restated in subsection 2, and from that concludes that the limitation applies only to general contractors and owner-builders. But I struggle to pull that from the text of the statute, considering that the sentence merely states: "A notice of commencement of work is effective only as to any labor, service, equipment, or material furnished to the property subsequent to the posting of the notice of commencement of work." *Id.* § 572.13A(1). The limitation, by my reading of section 572.13A, attaches to the notice of commencement irrespective of the party that filed it.

Besides running contrary to the text of section 572.13A, subsection 2, the majority's reading that this limitation applies only to general contractors and owner-builders but not to subcontractors would have a strange result. The notice of commencement requirement has a simple function: it discloses that a general contractor or owner-builder "has contracted or will contract with a subcontractor to provide labor or furnish material for the property." *Id.* § 572.13A(1). It announces, in other words, that as to the particular property at issue, at least one potential lien-exercising subcontractor exists. Under the majority's reading, there's no consequence to a subcontractor that fails to timely post the notice of commencement disclosing that it (a subcontractor) exists, but a general contractor or owner-builder that fails to timely post the same notice about a subcontractor suffers a consequence. Considering the subcontractor-disclosing

aim of section 572.13A, the disparate treatment strikes me as contrary to both text and logic.

Iowa Code section 572.18 grants mechanic's liens priority over other liens in certain circumstances. Section 572.18(1) describes those circumstances:

> Mechanics' liens posted by a general contractor or subcontractor within ninety days after the date on which the last of the material was furnished or the last of the claimant's labor was performed *and for which notices were properly posted to the mechanics' notice and lien registry internet site pursuant to sections 572.13A and 572.13B* shall be superior to all other liens which may attach to or upon a building or improvement and to the land upon which it is situated, except liens of record prior to the time of the original commencement of the claimant's work or the claimant's improvements, except as provided in subsection 2.

(Emphasis added.) Subsection 2 then states that construction mortgage liens have priority over all mechanic's liens whose claimants commenced their particular work after the date that the lender recorded its construction mortgage lien. *Id.* § 572.18(2).

For mechanics' liens to have priority over other liens, the mechanics' liens (1) must be posted within ninety days from when labor or materials were last provided and (2) notices must be "properly posted to the mechanics' notice and lien registry internet site pursuant to sections 572.13A and 572.13B." *Id.* § 572.18(1). Because Borst and Kelly failed to timely file a notice of commencement within ten days of beginning their work, notices were *not* "properly posted to the mechanics' notice and lien registry internet site pursuant to sections 572.13A and 572.13B." *Id.* Their mechanics' liens thus should not have priority over Finance of America's construction mortgage under section 572.18, and I would reverse the district court's ruling that held to the contrary.

McDonald and Oxley, JJ., join this dissent.